## PLEASANTS VS. HEARD.

A general verdict of guilty, in an action of trespass for assault and battery, is good upon issues to the pleas of *not guilty* and *son assault demesne.*

The decision of the court below, refusing to grant a new trial, upon the grounds that the verdict is contrary to evidence and the damages excessive, will not be disturbed, where there is no total want of evidence to sustain any material allegation in the declaration, and the amount of damages, upon all the facts of the case, does not shock one's sense of justice.

The affidavit of a juror, after verdict rendered, is inadmissible to impeach and set aside the verdict rendered by him, upon his solemn oath, upon the ground that he, with the other jurors, had acted illegally and improperly in the mode adopted by them in agreeing upon the amount of damages nor can the admissions and statements of a juror be received for such purpose.

*Appeal from the Circuit Court of Crawford County.*

Hon. BEAUFORT H. NEELY, Circuit Judge, presiding.

CURRAN, for the appellant.

PIKE & CUMMINS, for the appellee, contended that the jury might well have resorted to the mode here adopted of ascertaining the amount of the plaintiff's damages, or to any other mode they might think proper, by way of compromising conflicting opinions, in a case, like this, sounding in damages. That neither the affidavit of a juror, nor his statements to others, is admissible in evidence to prove facts impeaching his own verdict. *Dana vs. Tucker,* 4 *J. R.* 487 *; Meade vs. Smith,* 16 *Conn. Rep.* 346 *; Bennett vs. Baker,* 1 *Humph.* 399 *; Willing vs. Swasey,* 1 *Browne* 123 *; Clark vs. Read,* 2 *South.* 486 *; Vaise vs. Delavae,* 1 *T. R.* 11 *; Owen et al. vs. Warburton,* 4 *Bos. & Pul.* 326 *; Lessee of Sluggage vs. Swan,* 4 *Binn.* 150 *; Price Ex. vs. Warren,* 1 *Hen. & Munf.* 385. That the verdict is responsive to the issues *Dyer vs. Hatch,* 1 *Ark.* 339 *; Wilson vs. Bushnell,* 1 *Ark.* 465.

Mr. Chief Justice English delivered the opinion of the Court.

William B. Heard brought an action of trespass, in the Crawford Circuit Court, against Joseph C. Pleasants, for an assault and battery upon his person. The defendant pleaded not guilty, and *son assault demesne.* Issues were made up to these pleas, and submitted to a jury, who returned a verdict of guilty, assessing the plaintiff's damages at six hundred and twenty dollars. A motion for a new trial was made by the defendant, overruled, a bill of exceptions taken setting out the facts, and an appeal to this court.

The first and second grounds urged in the motion for a new trial, present the question whether the general verdict of guilty was responsive to the issues submitted to the jury.

The issues were to the pleas of not guilty, and *son assault demesne.* The jury returned their verdict as follows: "We, the jury, find the within named defendant, Joseph C. Pleasants, guilty in manner and form as charged in the within declaration, and we do assess the plaintiff's damage to six hundred and twenty dollars."

A general verdict is held to be good on two issues, where the finding necessarily shows that the subject matter of both issues was determined. *Wilson vs. Bushnell,* 1 *Ark. R.* 471; *Dyer vs. Hatch, ib.* 346; *Woolford et. al vs. Isbel,* 1 *Bibb* 247.

The plea of *son assault demesne,* is a special plea of justification. It confesses the battery alleged, but avoids and justifies it on the grounds of self-defence. The verdict, that the defendant is guilty in manner and form as alleged in the declaration, necessarily negatives the justification set up by such plea.

The third and fourth grounds urged in the motion for a new trial, are, that the verdict is contrary to the evidence; and that the damages assessed are excessive and unreasonable.

The testimony upon the trial, as set out in the bill of exceptions, is, in substance, as follows:

*Pennywit,* the first witness for the plaintiff, testified that he had been in company with the plaintiff, on the bank of the Arkansas river, and they were walking across the street (of Van Buren,) when they were met by the defendant, who spoke to the plaintiff, saying he wished to see him. Plaintiff and defendant walked off to one side, and witness continued on his way. The parties conversed together a short time, when witness heard a noise, which attracted his attention, and, on looking around, he saw the defendant striking at plaintiff with his fist; plaintiff, in the mean time, was retreating in the direction of the place where the witness was standing, and defendant, pursuing him. About the time plaintiff reached the opposite side of the street, near where witness was standing, he fell, but whether he stumbled, or was knocked down by the defendant, witness was unable to say. Defendant jumped on plaintiff as soon as he fell,

and was in the act of beating him, when several persons inter-
ferred, and separated them. Plaintiff was a small man, in bad
health at the time, and very weak — defendant, a large, robust
and athletic person. Plaintiff seemed to be badly hurt, and bled
profusely from a wound inflicted above one of his eyes. Wit-
ness did not see the commencement of the difficulty, because he
was not looking at the parties when the fight commenced.

This statement is corroborated by several other witnesses.

Dr. *Brown* testified that he was called upon to dress the plain-
tiff's wound — the wound above one of his eyes, was a small one;
but it occasioned the eye and the side of the face to swell very
much. Both eyes became inflamed in consequence of the injury,
and the plaintiff suffered a great deal. The bill of witness
against plaintiff did not exceed $20.

One witness for the plaintiff testified to declarations of defen-
dant made previous to the difficulty, in which he complained
that the plaintiff had treated him badly about the purchase of
some lots.

Two witnesses were introduced, by the defendant. They do
not contradict the statements made by the plaintiff's witnesses,
but they testify that, before defendant struck the plaintiff, they
saw the plaintiff draw back his clenched fist, as though he were
going to strike the defendant.

All the witnesses concur in the fact, that plaintiff retreated,
from the time defendant first struck at him; that defendant pur-
sued him; and that plaintiff appeared to be pretty badly hurt.

Upon the testimony introduced by the parties, without in-
structions from the court, the jury, in the exercise of their pecu-
liar province of passing upon the weight of the evidence, found
the defendant guilty of a trespass upon the person of the plain-
tiff, and assessed the damages at six hundred and twenty dollars.
There is no total want of evidence to sustain any material alle-
gation in the declaration, and there is nothing in the verdict, as to
the amount of damages, upon all the facts of the case, that shocks
our sense of justice.

The decision of the court below therefore, refusing to grant a new trial, upon the grounds above stated, will not be disturbed.

The fifth, last, and most important cause, assigned in the motion for a new trial, is, that the jury, in assessing the damages, acted illegally and improperly, in this: that they agreed that each juror should set down in figures, the amount of damages he should be in favor of assessing, and that the aggregate of all the sums should be divided by twelve, and the quotient fixed upon as the damages; and that, in pursuance of such previous agreement, the jurors proceeded each to set down the amount he was in favor of assessing, and, after all the jurors had thus set down the several amounts, they were added up, and the product divided by twelve, which gave the sum of $620, which was accordingly taken and inserted in the verdict of the jury.

In support of this feature of the motion for a new trial, several affidavits were made and filed, which are in substance as follows:

*William Walker*, Esq., one of the defendant's counsel, made an affidavit to the effect, that, immediately after the verdict was rendered by the jury, he was advised by his colleague, Mr. Green, that Green B. Strawn, one of the jurors, informed him that the damages had been assessed or fixed upon by the jury, in the manner set forth above. That affiant then visited the jury room, and found a copy of the acts of the General Assembly, upon the back of which he found a column of figures in pencil, which was added up, showing the amount of all the sums to be $7,450, which was divided by twelve, making the product $620; and that affiant exhibited said pencil marks to Hardin Rainey, one of the jurors, and, on enquiry of him, whether the damages assessed in the case had been fixed upon as above stated, he answered in the affirmative, and said that the calculation in pencil, on the back of said acts, was the one made by the jury.

The affidavit of *Green B. Strawn*, one of the jurors, states, that, in assessing the damages, the jury agreed that each juror should state the amount he was in favor of assessing, that the several amounts should be added up, and the product divided by the

number of jurors, and that the quotient should be taken as the damages to be assessed in favor of the plaintiff; and that, in pursuance of said agreement, each juror stated the amount he was in favor of, which was set down, and the whole added up, which amounted to the sum of $7,450, which, being divided by twelve, produced the sum of $620, which was taken and inserted in the verdict as the damages assessed by the jury. That the figures in pencil, made on a copy of the acts of the General Assembly, shown to affiant by Wm. Walker, Esq., were the same made by Pickett or Wilcox, one of the jury, in setting down the several sums, adding them up, and dividing the product as above stated. "

It is stated, in the bill of exceptions, that a like affidavit was made by Rainey, another of the jurors, but no such affidavit appears in the transcript.

On the hearing of the motion for new trial, it seems that the copy of the acts, above referred to, was produced in court, and the figures admitted to have been made by Pickett, one of the jurors. They are copied in the bill of exceptions. The twelve sums put down in a column, are 200, 2000, 500, 1000, 1000, 1000, 500, 500, 50, 150, 500, 150 — added up 7,450, and the product divided by twelve, making 620, with 10 remainder.

On the motion for a new trial, the affidavit of the juror *Strawn*, was produced with the view to impeach and set aside the verdict rendered by him, upon his solemn oath, on the ground that he, with the other jurors, had acted illegally and improperly in the mode adopted by them of agreeing upon the amount of damages. Can the affidavit of a juror be received and considered for such purpose. ?

In the case of *Stanton vs. The State*, (13 *Ark. R.* 319,) which was an indictment for murder, a motion for a new trial was made by the prisoner, on the ground that one of the jury, while in the charge of the officer, and deliberating upon their verdict, absented himself from the jury room — which was sustained by the affidavit of one of the jurors; that another juror, named, absen-

ted himself from the room, provided for the jury at the hotel, without being in custody of the officer, who had charge of the jury; that the officer, being notified of his absence, went in search of him, but came back without him; that the juror continued absent for about two hours, and did not return to the room until near daylight. To rebut this, the attorney for the State filed the affidavit of the juror, whose conduct had been thus impeached, explaining the cause of his leaving the jury room, and stating that, during his absence, he did not see or con_ verse with any one. Mr. Chief Justice WATKINS in delivering the opinion of this court, in that case, said: It appears that the attorney for the State excepted to the opinion of the court, in allowing the first affidavit to be filed on behalf of the prisoner, and certainly the mode here resorted to of impeaching the verdict by the affidavit of one of the jurors who concurred in rendering the verdict, is subject to many serious objections. But, apart from that, and waiving any enquiry whether the affidavit on its face is sufficient to raise a presumption that the absent juror was exposed to improper influences, any such presumption is fully rebutted, and the absence explained by the affidavit of the juror himself. "

This opinion would seem to disapprobate the receiving of the affidavit of a juror to impeach the verdict which he had concurred in rendering, but to admit of affidavits of jurors to uphold the verdict. In the case of *Cornelius vs. The State*, (7 *Eng.* 810,) the affidavits filed to impeach the verdict, were not made by members of the jury, but by other persons, and in that case, also, the affidavits of jurors were allowed to uphold the verdict.

In the case of *Owen et al. vs. Warburton*, (4 *Bosanquet & Puller's Rep.* 326,) it appeared, from an affidavit made by one of the jurors, that the jury disagreeing as to whether their verdict should be for the plaintiff or defendant, decided the matter by lot; and on this affidavit, a motion was made to set aside the verdict. Lord MANSFIELD said, " We have conversed with the other judges upon this subject, and we are all of opinion that the

52BB

affidavit of a juryman cannot be received. It is singular, indeed, that almost the only evidence, of which the case admits, should be shut out; but considering the arts which might be used, if a contrary rule were to prevail, we think it necessary to exclude such evidence. If it were understood to be the law, that a juryman might set aside a verdict by such evidence, it might sometimes happen that a juryman, being a friend to one of the parties, and not being able to bring over his companions to his opinion, might propose a decision by lot, with the view afterwards to set aside the verdict by his own affidavit, if the decision should be against him."

Lord MANSFIELD observed, in the same case, that the authorities on the subject, were contradictory, and that it was proper to settle the question, and it was settled as above.

In Kentucky, it seems to be well settled that the affidavits of jurors, to prove such misconduct of the jury as will invalidate their verdict, or to question the purity of their motives, or to explain either the law or the facts which influenced them, with the view to impeach their verdict, are not admissible. But, that such affidavits are admissible in cases of mistake, &c., which do not subject the jury to any imputation of impure motives or palpable impropriety of conduct, See *Taylor vs. Giger*, 1 *Hardin Rep.* 536; *Heath vs. Conway*, 1 *Bibb* 398; *Doran vs. Shaw*, 3 *Monroe* 411; *Steele's heirs vs. Logan*, 3 *A. K. Marshall* 394; *Johnson vs Davenport*, 3 *J. J. Marshall* 390; *Cain vs. Cain et al.*, 1 *B. Monroe* 213.

In *Dana vs. Tucker*, (4 *Johnson Rep.* 487,) affidavits of two of the jurors were read to impeach the verdict on ground similar to that which is urged against the validity of the verdict in this case, and the court held such affidavits not to be admissible.

In *Clum vs. Smith*, (5 *Hill's Rep.* 560,) it was decided that affidavits of jurors could not be received to impeach the verdict for mistake or even in respect to the merits, nor to prove irregularities or misconduct, either on their own part, or that of their fellows.

In Connecticut, it seems that it has been adopted, as a universal rule, that where it is sought to to set aside a verdict for the mistake or misconduct of the jurors, those jurors are not competent witnesses to prove such mistake or misconduct. The *State vs. Freeman,* 5 *Conn. R.* 348 ; *Meade vs. Smith,* 16 *ib.* 356.

See, also, *Willing vs. Swasey,* 1 *Browne* (*Pen. Rep.*) 123 ; *Price's ex. vs. Warren ad.,* 1 *Hen. & Munf.* 385 ; *Shobe vs. Bell,* 1 *Randolph Rep.* 59 ; which have a bearing upon the question before us.

See, also, on the same subject, the following authorities : *Barlow vs. State,* 2 *Blackf.* 114 ; *Cluggage vs. Swan,* 4 *Binn.* 150 ; *Sehank vs. Stephenson,* 1 *Penn. Rep.* 587 ; and numerous other cases collected in the 2 *vol. United States Digest,* under the title *Jurors.*

Though there are some conflicting cases, we think it may safely be decided, upon authority, and for many good reasons, that the affidavit of the juror *Strawn,* was not admissible, in this case, to impeach the verdict rendered by him, for the cause stated in the affidavit. But we are not to be understood as deciding, that the affidavit of a juror may, in no case and for no cause, be received to impeach a verdict rendered by him. We mean only to decide the case now before us.

*Mr. Walker,* in his affidavit, does not profess to have any personal knowledge of the manner in which the jury agreed upon the amount of damages assessed by them ; but simply states the admissions made by the juror *Strawn,* to his associate counsel, Mr. Green, and the admissions made by the juror, *Rainey,* to him, after the verdict was rendered.

Every reason of public policy, which would render it improper to permit a juror to impeach his own verdict, for the misconduct of himself, or his fellows, by affidavit, would apply, with increased force, to admissions or declarations made by him out of doors, after rendering the verdict. To allow such admissions or declarations to be proven by others, for the purpose of invalidating verdicts, it seems to us would open a wide

door, and temptation to the commission of frauds. The authorities are also against it. *Burgess vs. Langley,* 5 *Manning & Granger,* 721 (44 *Eng. Com. Law Rep.* 377 ; ) *Clum vs. Smith,* 5 *Hill's Rep.* 560 ; *Cain vs. Cain et al.,* 1 *B. Monroe* 213 ; *Aylett vs. Jewel,* 2 *Blackst. Rep.* 1299.

Disregarding the affidavit of the juror *Strawn,* and the admissions made by him, and the juror *Rainey,* after the verdict, to Walker and Green, and there is no legal evidence before us as to the manner in which the jury arrived at an agreement upon the amount of damages assessed by them. It therefore becomes unnecessary for us to decide whether a verdict agreed upon in the manner stated in the affidavits in question, should be set aside or not. The authorities on this subject are in conflict.

The decision of the court below, refusing a new trial, is sustained, and the judgment affirmed.