## JENKINS v. STATE.

### Opinion delivered November 5, 1917.

1. APPEAL AND ERROR—CONTINUANCE—ABSENT WITNESS.—It is not an abuse of the discretion of the trial court to refuse a continuance on account of the absence of a witness, where the testimony, if the witness were present, would be merely cumulative.

2. ROBBERY—ALLEGATION OF OWNERSHIP.—The ownership of property taken by robbery may be alleged to be in the party from whom the property was taken, where the property was taken either directly from the person or in the presence of the party robbed, by the exercise of force or a previous putting in fear.

3. CRIMINAL LAW—ROBBERY—MONEY—PROOF.—An indictment charging robbery, alleged that the money stolen was the lawful money of the United States. *Held*, there was no variance between the indictment and proof where the person from whose possession the money was stolen described the money as $645 in gold, and as currency and silver and minor coins where other witnesses used the same terms, and also referred to portions of the money as greenbacks, and as bills.

4. CRIMINAL LAW—EVIDENCE—ADMISSION MADE BY DEFENDANT.—Any admission of a defendant, whenever made, which tends to show his connection with the crime charged in the indictment, is admissible against him.

5. CRIMINAL LAW—IMPEACHMENT OF VERDICT BY JUROR.—A juror can not impeach the verdict, in the rendition of which, he joined.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; affirmed.

*Brundidge & Neelly,* for appellant.

1. The motion for continuance should have been granted. It was an abuse of discretion by the court as the testimony was material.

2. There was a fatal variance between the indictment and proof. The money was alleged to be the property of R. E. Kent, cashier, and the proof shows it was that of the Bank of El Paso. It does not charge that the money was in Kent's possession as cashier or that he had a special ownership in it. 58 Ark. 37; 72 *Id.* 525; 70 *Id.* 165.

3. It was not proven that it was lawful money of the United States as alleged. 80 Ark. 97; 71 *Id.* 418.

4. It was error to permit witnesses to detail conversation had with defendant at the time of his arrest, subsequent to the robbery. It was not competent evidence.

5. There was misconduct of the jury. There was a set of Arkansas Reports in the jury room accessible

to the jury and one of the jurors read the case of *State v. Fox.* This was prejudicial. 16 R. C. L. 301, 313; 103 Ark. 10. It devolved upon the State to show that no prejudice resulted. 26 Ark. 323; 40 *Id.* 454; 57 *Id.* 8; 66 *Id.* 545; 29 *Id.* 268; 44 *Id.* 120.

6. The record does not show that the jury were sworn. 37 Ark. 63; 34 *Id.* 257; 25 *Id.* 106; 45 *Id.* 143.

7. The verdict is contrary to the evidence and there is error in the instructions.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee; *W. L. Pope,* of counsel.

1. The continuance was properly refused. Due diligence was not shown. 100 Ark. 180; 130 Ark. 245; 94 Ark. 169. The evidence was cumulative merely.

2. There is no variance. The money was in the possession and custody of the cashier. 94 N. E. 857; 79 S. W. 691; 1 Strange 505.

3. There was proof that it was lawful money of the U. S. viz. gold, silver, currency, greenback, dollars and cents. Any of these is sufficient. 115 Ala. 80; 6 Ark. 292; 83 Ala. 51; 79 *Id.* 259; 23 Ind. 21; 25 Ark. 121.

4. The statements of appellant at the time of his arrest subsequent to the robbery were properly admitted. 102 Ark. 525; 105 *Id.* 72.

5. No misconduct of the jury was shown; the juror's affidavit was not competent. Kirby's Digest, § 2423; 130 Ark. 48; 109 Ark. 193; 130 Ark. 189.

6. The jury were properly sworn. 29 Ark. 17; 34 *Id.* 257.

7. The evidence is sufficient.

8. There is no error in the court's instructions. They state the law correctly. 64 Ark. 247; 86 *Id.* 23; 97 *Id.* 92; 79 S. W. 691.

SMITH, J. Harold and Ellis Jenkins are brothers, and were jointly indicted as accessories before the fact to robbery. Their trials were separate, but both were convicted, and they have each prosecuted an appeal to

this court. The questions raised in these appeals are so similar that we dispose of them in a single opinion. The principals in the crime were D. F. Lemmons and John Quattlebaum, and the indictment alleged that it was committed by robbing R. E. Kent, cashier of the Bank of El Paso, of $1,700, lawful money of the United States, of the value of $1,700 and the ownership of the money was alleged to be in Kent as cashier of the bank.

Both Quattlebaum and Lemmons confessed their guilt, and testified at the trial that the Jenkins boys were parties to the conspiracy to rob the bank, although they were not present when the crime was committed.

(1) There was a motion for a continuance in each case, on account of the absence of Harry Gans, who, if present, would have testified, according to the recitals of the motion, that he had talked with Quattlebaum about the case, and Quattlebaum had told him that neither of the Jenkins boys had advised or encouraged the commission of the crime, and neither of them had any part in it. In the motion filed in Harold Jenkins' case, it was recited that Henry Pearl, an absent witness, would testify that he was with Harold Jenkins on Friday and Saturday before the commission of the robbery, and that Jenkins was not with Quattlebaum or Lemmons on those days and had no conversation with them. This testimony was important because Quattlebaum and Lemmons had fixed Friday and Saturday as the time when the final details of the robbery were perfected.

It appears, however, that the sheriff made a *non est* return on the subpoena three days before the day of trial, and that the defendants knew the witnesses were not residents of the county to whose sheriff the subpoenaes were issued, and no showing is made that the sheriff to whom the subpoena was issued and delivered could ever have served it. The motion recites that depositions can, and would be taken if time were granted and the case postponed to a later day in the term of the court.

This testimony appears to be largely cumulative to that of four witnesses who were present at the trial and did testify, and we can not say that the court abused its discretion in overruling the motion for a continuance. *Holub* v. *State,* 130 Ark. 245.

The real and difficult question in each of the cases is whether there was a variance between the allegations of the indictments and the proof in each case. Kent, the cashier, testified that the money stolen was the property of the Bank of El Paso, a corporation, and that it did not belong to him, and none of it was on his person; but he also testified that he was the officer of the bank in charge of the money, and that it was taken from the bank and out of his custody and possession by putting him in fear. It is earnestly insisted by counsel for appellant that the allegation of ownership being essential, there is a fatal variance, because the testimony shows the bank to have been the owner of the money, and not Kent, the cashier. This same question was raised in the case of *State* v. *Montgomery,* 79 S. W. 693, where the Supreme Court of Missouri decided that a clerk having possession of his employer's money has a sufficient ownership thereof to support an allegation of ownership in the clerk in an indictment for robbery.

This is a well considered case, and, in reaching the conclusion stated above, the court reviewed numerous authorities dealing with the characteristics of the crime of robbery which distinguishes it from other forms of theft, and the reasoning of the court is so cogent that we quote liberally from the opinion. It was there said: "The question presented by this record * * * is whether a clerk left in charge of, and intrusted with the care of, his employer's cash, with authority to sell his goods and make change out of the drawer, is not a person in whom the ownership of such money may be laid, as against a robber * * * The question is one of much practical moment. Mr. Mills bore a contract relation to Mr. Radford, by which, in consideration of

his wages as clerk, the law, in the absence of an express agreement, implied a promise on his part to exercise care and prudence in the management of Mr. Radford's store in the course of his employment. Certainly the law imposed upon him the obligation of collecting the price of the goods he sold, and of accounting for the same. He was, for that purpose, intrusted with the cash register; and by virtue of his employment he was authorized to take money out of the register to make change when he sold an article, and was required to place his receipts in the register. He was an agent for hire, and Mr. Radford had, by the course of business adopted delivered to him the possession of the cash in the register, in law, as effectually as if he had gone through the most formal act of delivery. The delivery in this case, while not the transfer of the absolute title to Mr. Radford's money, was a transfer of its possession, with its accompanying temporary rights. Even bailees without reward have an interest sufficient to enable them to sue tort feasors, and to maintain trover against all strangers to the bailment who wrongfully invade their possession. Possession is *prima facie* evidence of right, and the party who seeks to dispossess should show a better title; and, moreover, the possessor sustains a responsibility to the true owner.''

After citing the decision of the Court of Appeals of New York in the case of *Brooks* v. *People,* 49 N. Y. 436, to the same effect, the opinion of the Supreme Court of Missouri continues:

''The same question again arose on a statute in the same words in *State* v. *Adams,* 58 Kan. 365, 49 Pac. 81, and the court very aptly says: 'The characteristic of robbery, distinguishing it from other forms of larceny, lies in the violence inflicted on the person of one in possession of the property, or in putting him in fear of injury to his person. So far as the mere taking is concerned, the offense is neither greater nor less if filched in any other way. The gravity of the offense lies in the

breach of the peace, in the personal violence inflicted, or the terror excited in the mind of the individual robbed. At common law it was never held that the property taken must belong to the person robbed. It was sufficient that the property belonged to the person robbed or some third person.' 'As against the robber, a servant has the same right and rests under the same duty to preserve and defend his possession of the property that the owner has. He is the custodian, and has a right to oppose with violence, if necessary, the violence offered by the robber. As against him, he stands as owner, and we think the statute intended to extend to him the full measure of protection that it gives to the owner or bailee. The principles governing civil actions for the recovery of property wrongfully taken have no application in a case of robbery.' " See, also, *Commonwealth* v. *Butts,* 124 Mass. 449.

(2) We approve the decisions of these courts and the reasoning leading to their conclusions, and we follow their lead in holding that the ownership of property taken by robbery may be alleged to be in the party from whom the property was taken, where the property was taken either directly from the person or in the presence of the party robbed by the exercise of force or a previous putting in fear. *Clary* v. *State,* 33 Ark. 561; *Routt* v. *State,* 61 Ark. 594.

(3) The indictment alleged that the money stolen was lawful money of the United States; and it is said the testimony does not establish this allegation. It does not appear that any witness said, in express terms, that the money stolen was lawful money of the United States. But this is the necessary meaning of all that was said on that subject. The cashier described the money as $645 in gold, and as currency and silver and minor coin. Other witnesses used the same terms, and also referred to portions of the money as greenbacks and as bills, and it is perfectly obvious that in each instance the witness was talking about the medium of exchange circulating

in this country which we call money and which is measured in dollars, and we conclude, therefore, that there was no failure of proof on this subject. *Cook* v. *State,* 196 S. W. 922.

(4) It is insisted that error was committed in permitting witnesses to detail conversations had with the defendant prior to the arrest of one, and at the time of the arrest of the other, and subsequent to the robbery, because they were indicted as accessories before the fact. But any admission of a defendant, whenever made, which tends to show his connection with the crime charged in the indictment, is admissible against him.

(5) Affidavits were filed touching certain alleged misconduct of the jury in the Ellis Jenkins case. An affidavit of a juror was filed which recited that the jury retired to a room in the courthouse where there was a set of the Arkansas Reports, and that, after the jury had failed to agree, a member of the jury found and read the decision of this court in the case of *Fox* v. *State,* 102 Ark. 393, whereupon the jury then agreed upon its verdict. The evidence of this fact appears from the affidavit of the juror, and the statute forbids a juror from thus impeaching his verdict. Section 2423, Kirby's Digest. The only competent evidence on this subject consisted of the affidavit of an attorney, who stated only that there was a set of the Arkansas Reports in the room to which the jury retired; and a new trial can not be granted on that evidence.

Exceptions were saved to the action of the court in giving, and in refusing to give, instructions on the subject of the sufficiency of the corroboration of an accomplice. But, without setting out these instructions, it may be said that they declare the law in conformity with the decisions of this court in the cases of *Celender* v. *State,* 86 Ark. 23, and *Russell* v. *State,* 97 Ark. 92.

It is finally argued that there is not sufficient corroboration of the testimony of accomplices to sustain the conviction. But, as to Harold Jenkins, it may be said

that several witnesses testified that he had spoken to them about robbing the bank, and one witness he had asked to assist in the robbery was told that the bank would be robbed about three weeks before that crime was committed. Harold Jenkins was in El Paso at the time of the robbery, offering a mule for sale, which he did not sell; and one witness testified that shortly before the robbery Jenkins asked him what he supposed Kent would do if a man walked into the bank and threw a gun on him and told him to hand out the dough.

As to Ellis Jenkins, the testimony is to the effect that he sent Sid Quattlebaum to El Paso to assist the robbers in making their escape, and that he attempted to exculpate Sid Quattlebaum, and he explained circumstances leading to Sid's arrest. He was shown to have attempted to assist one of the robbers in making his escape from the jail, and that he made the statement that if he did not get him out, they were all stuck. Damaging statements were made at the time of his arrest, and the principal part of the stolen money was found in his possession.

Explanations of these circumstances were offered, but the jury has passed upon them, and we need only to say that, if these explanations were not credited, the evidence of corroboration is sufficient to meet the requirements of the law.

Finding no prejudicial error in either case, the judgments in both cases are affirmed.