## KINDRIX *v*. STATE.

### Opinion delivered May 12, 1919.

1. CRIMINAL LAW—LIMITING NUMBER OF IMPEACHING WITNESSES.— In a prosecution for manufacturing whiskey, it was not an abuse of discretion for the court to limit the number of witnesses for the purpose of impeaching the prosecuting witness, where the court announced its intention before any witnesses were called.

2. SAME—TRIAL—COMMUNICATIONS WITH JURY.—It is reversible error for the trial judge to communicate with the jury, in the defendant's absence, in regard to their verdict.

3. SAME—RENDITION OF VERDICT—EXAMINATION OF JUROR.—Kirby's Digest, section 2419, providing for polling of the jury, the court is not limited to receiving the answer "Yes" or "No," but is limited to ascertaining whether the verdict is the juror's verdict, without examining the juror as to how the verdict was arrived at except as to whether it was arrived at by lot.

4. SAME—SEPARATION OF JUROR.—The separation of a juror from his fellows for the purpose of asking the sheriff to inform the court that he was sick was not error where he did not discuss the case with any one during such separation.

Appeal from Montgomery Circuit Court; *Scott Wood,* Judge; ·affirmed.

*Norwood & Alley,* for appellant.

1. The court was guilty of misconduct in its dealings with the jury. It conversed with the foreman and jury when the verdict was rendered. The conduct was improper ·and calls for reversal. 20 L. R. A. (N. S.) 429; 11 Am. Dec. 185; 124 Mass. 567; 51 N. Y. 558; 12 Ind. 563; 23 Ill. 349; 14 Ohio 511; 262 *Id.* 392; 143 Ky. 503; 163 Mo. App. 123; 17 L. R. A. (N. S.) 609; 40 *Id.* 239.

2. It was error to allow the separation of the jurors. 44 Ark. 115.

3. It was an abuse of discretion to limit the number of witnesses to five. 1 Wharton on Ev. 505; 10 L. R. A. 576.

*John D. Arbuckle,* Attorney General, and *Robert C. Knox,* Assistant, for appellee.

1. There was no improper conduct by the judge. Kirby's Digest, § 2423; 130 Ark. 48; 109 *Id.* 193; 126 *Id.* 562; 67 *Id.* 266-272.

2. It was shown that no improper influence reached the jury while separated. 73 Ark. 501-511.

3. There was no abuse of discretion by the court in limiting the number of witnesses. 53 Ark. 161-178; Thompson on Trials, § § 352-3.

SMITH, J. Appellants were indicted and convicted for manufacturing whiskey. At their trial they had nine witnesses present for the purpose of impeaching S. H. Williams, the witness on whose testimony the prosecution relied for a conviction; but the court stated in advance of the introduction of this impeaching testimony that appellants would be allowed to introduce only five witnesses for this purpose. The number of witnesses allowed by the court were introduced and testified to the bad character of the witness for the State and that they would not believe him on oath. Appellants offered the testimony of four more witnesses to the same effect, but the

court refused refused to permit them to testify. Three witnesses testified that the witness Williams had a good reputation.

Upon the return of the verdict of the jury the record contains the following recital:

"After hearing the instructions of the court and the arguments of the counsel, the jury retired to consider of their verdict and on the following morning returned into court with a verdict finding the defendants guilty as charged, and 'we, the jury, also recommend that they be pardoned at the expiration of six months of their term.'

Mr. Norwood: Just one minute. Mr. Smith (addressing one of the jurors), I will ask you if during the deliberation of this case if you didn't see the judge and ask him if the jury would find the defendant guilty and recommend a pardon if the judge would recommend that he be pardoned at the end of three or six months?

Mr. Smith: I asked the judge if we could come to terms if the jury could do that, if he could recommend—

Mr. Norwood: I want the court to consider this as evidence on my motion for a new trial.

The Court: I expect you could get at that better by objecting to the receiving of the verdict and introduce your testimony later.

Mr. Norwood: I object to receiving that verdict and them giving that reason now and I want this considered at the same time on my motion for a new trial.

The Court: That verdict now applies to both of the defendants; is that the understanding of all the jury?

The jury: Yes, sir.

(By request the jury are polled and all say that it is their verdict.)

Mr. Norwood: I want to prove by the jury that it was reported to them that it would be recommended that a pardon be granted and that induced them to reach their verdict.

The Court: We will let you introduce them as witnesses if you want to, right now.

"—— Smith, being duly sworn, testified as follows:

"By Mr. Norwood: Q. Mr. Smith, you acted as foreman of the jury?

"A. Yes, sir.

"Q. Didn't you, about an hour before you returned your verdict into court, discuss the matter with the trial judge and tell him that the jury would probably return a verdict of guilty and recommend a pardon and want to know if the court would recommend it?

"A. I didn't ask if he would recommend it; I asked if we could do that. I asked if we could make that recommendation ourselves.

"Q. Didn't you know you had a right to recommend anything you wanted to?

"A. I don't know; I just wanted to ask him at the request of the jury.

"Q. The court told you if they would recommend a pardon at the end of three or six months that the court would recommend it too?

"I didn't understand it that way, what I wanted to know, and I think the jury all understands that.

"The Court. Just have him state what statement he made to the jury.

"Q. What did you tell the jury the court told you?

"A. I told the jury that the court said that we could do that all right.

"Q. And didn't you tell the jury that the court said he would recommend a pardon?

"A. The judge said he thought that the court and the prosecuting attorney would both recommend a pardon. I didn't ask him to recommend it. We merely wanted to know whether we could make such a disposition as that of the case.

"Q. Didn't that influence the jury to return a verdict, the fact that the court and the prosecuting attorney would recommend it and that you all were allowed to recommend it?

"A. It did a part of them.

"Q. Didn't you discuss the case with the sheriff last night and tell him how some of the jurors stood and tell him how you voted on the first ballot?

"A. No, sir, I did not; I don't think we discussed the case at all. The sheriff was up here two or three different times, but we were not deliberating at that time though. I don't remember saying anything to the sheriff about how about we stood."

Thereupon jurors Summitt, Chitwood, Prowse and O'Neill were examined and substantially corroborated the testimony of foreman Smith.

As ground for a new trial it was also alleged that one Gibbs, a member of the jury, had been permitted to separate from his fellows and while thus apart from them discussed the case with the sheriff. The testimony on that issue, however, only tended to show that Gibbs was sick and desired the sheriff to so inform the court to the end that the jury might be discharged, and it was shown that the juror did not discuss the case with the sheriff or any other person except his fellow jurors.

The court did not abuse its discretion in limiting the number of impeaching witnesses to five, especially as the announcement of the intention so to do was made before any of these witnesses were called. This testimony related to a collateral issue about which the court had the right to impose a reasonable limitation, and we do not think the limitation imposed constituted an abuse of the discretion which the court had. Thompson on Trials, sec. 353.

It is, of course, not only improper, but is error calling for the reversal of the judgment, for the court to communicate with the jury in the absence of the defendant any directions in regard to their verdict. *Hinson* v. *State*, 133 Ark. 149; *Pearson* v. *State*, 119 Ark. 152. And so here, the judgment would have to be reversed if there was any legal competent testimony that in the absence of the defendant the court had had a communication with the jury in which they were instructed in regard to the verdict to be returned. Appellant says that such was

the character of the communication between court and jury shown by the testimony set out above. But we do not stop to inquire whether this is true or not for the reason that this is not such testimony on that subject as we have the right to consider. Here the verdict of the jury had been read, whereupon the proceedings were had which we have set out in full. The statute provides for a poll of the jury and section 2419 of Kirby's Digest on that subject reads as follows:

"Upon a verdict being rendered, the jury may be polled at the instance of either party, which consists of the clerk or judge asking each juror if it is his verdict, and if one answers in the negative the verdict cannot be received."

We do not interpret this statute to mean that the inquiry of the clerk or judge is limited to receiving the answer "yes" or "no" from the juror as to whether the verdict returned is his verdict or not; but we do hold that the inquiry is limited to the ascertainment of the fact whether the verdict returned is the juror's verdict and that it is not proper or permissible under the statute to inquire of the juror how the verdict was arrived at except, indeed, that the juror may testify whether the verdict was arrived at by lot. Section 2423, Kirby's Digest; *Wingfield v. State*, 95 Ark. 71; *Harris v. State*, 31 Ark. 196; *State v. Bogan*, 12 La. Ann. 264; *Bean v. State*, 17 Tex. Cr. Apps. 60; *Bassham v. State*, 38 Tex. 622.

A number of States have statutes on the subject, while others regulate their practice by the common law. In Massachusetts, for instance, even in a capital case the right of polling the jury is denied upon the ground that no such right existed at common law, there being no statute on the subject. *Commonwealth v. Roby*, 12 Pick. 496; *Commonwealth v. Costley*, 118 Mass. 1.

Other courts in construing statutes similar to our own discuss the policy of the lawmakers in their enactment, and it is shown in these cases that it has not been deemed wise to permit the integrity of trial by jury to be destroyed by permitting a litigant to question the ju-

ror as to his verdict except to determine that the verdict returned is in fact the juror's verdict and was not arrived at by lot.

In volume 2, Bishop's New Criminal Procedure, section 1003-(3), the law is stated as follows: "3. Polling, —'If,' says Hale, 'the jury say they are agreed, the court may examine them by poll; and,' he adds, what is not law now, 'if in truth they are not agreed they are finable.' Thereupon any juror may dissent, even in the case of a sealed verdict. This practice is followed in most of our States; in some, only at the discretion of the court; in probably most it may be demanded by either party, and the court cannot refuse it. The question to the juror is simply, 'Is this your verdict?' If one dissents, the panel should be sent back for further deliberation. A juror cannot be asked as to misconduct of the jury. The right continues till the verdict is recorded or the jury dispersed. There are States wherein this practice is not accepted."

An interesting case on the practice of polling a jury is that of *State Life Ins. Co.* v. *Postal,* 84 N. E. 156, and the same case in the same voulme at page 1093. The second opinion was an opinion on rehearing and was devoted to a consideration of the inquiry proper to be made on polling a jury. This is a well considered opinion and cites a large number of cases. After quoting from the case of *Labar* v. *Koplin,* 4 N. Y. 547, a statement of the law to the effect that it is the absolute right of a party to have the jury polled on their bringing in their verdict but that the object of polling the jury is to ascertain if the verdict which has just been presented is their verdict or, in other words, if they still agree to it, and not to ask them what their verdict means nor to question them as to their intention in finding it, the court, through Hadley, J., proceeded to say: "This being the intent and purpose of the law, the exact form of the question to be propounded would seem immaterial so long as the answer pertinent thereto would be in exact line with such intent and purpose. This is illustrated by the fact that the form of the

question varies in different jurisdictions as well as in different courts of the same jurisdiction, although all agree upon the purpose and limitations of the poll. But the one in most common use is the simple question, 'Is this your verdict,' and several hold, with *Bowen* v. *Bowen,* 74 Ind. 470, that this covers the whole scope of the inquiry and is all that a party has a right to ask. And while we are unqualifiedly of the opinion that it is a much safer practice for our courts to confine themselves to this simple form of inquiry, yet we do not hold, and we do not understand the Bowen case to hold, that the inquiry must necessarily be in those exact words, and that the same inquiry may not be couched in different language.''

We need not consider here how otherwise than by the testimony of a juror the fact of an improper communication between court and jury may be established, as no such question is presented by the record, and we think the question which the present record does raise is disposed of when we say that such proof cannot be made by the juror. Section 2423, Kirby's Digest; *Jenkins* v. *State,* 131 Ark. 312, 319; *Speer* v. *State,* 130 Ark. 457, 458, 464; *Triplett* v. *Wesson,* 128 Ark. 233; *Rieff* v. *Interstate Business Men's Acc. Assn.,* 127 Ark. 254; *Barnett Bros.* v. *Western Assurance Co.,* 126 Ark. 562; *Capps* v. *State,* 109 Ark. 193, 197; *Osborne* v. *State,* 96 Ark. 400; *Griffith* v. *Moseley,* 70 Ark. 244; *Ward* v. *Blackwood,* 48 Ark. 396; *St. L., I. M. & Sou. R. Co.* v. *Cantrell,* 37 Ark. 519; *Fain* v. *Goodwin,* 35 Ark. 109; *Clark* v. *Bales,* 15 Ark. 452, 457; *Pleasants* v. *Heard,* 15 Ark. 403; *Atkins* v. *State,* 16 Ark. 591, 592.

Although the juror Gibbs did separate from his fellows it is affirmatively shown that no improper communication occurred between him and the sheriff, and the court below properly held that no error had been committed in this resepect.

Upon a consideration of the whole case no reversible error is found and the judgment of the court below is affirmed.