### ARNOLD v. STATE.

### Opinion delivered October 3, 1921.

1. JURY—COMPETENCY OF JUROR.—A juror was not incompetent by reason of relationship to a witness, though he stated that such relationship might affect him in reaching a verdict, where he stated that he would not give any more credence to the testimony of such witness than he would to any other credible witness, although his relationship and personal knowledge of the witness might cause him to give greater credit to his testimony than he would give to that of another witness.

2. CRIMINAL LAW—INSTRUCTION OF COURT.—After the jury had deliberated for some time, they returned into court, and announced that they could arrive at a verdict "if what we recommend to the court would be given any consideration as to suspending sentence or making it so that his wife and child wouldn't suffer while he was taken away from them." The court refused to make any agreement as to suspending the sentence, and instructed the jury to find defendant guilty if the evidence convinced them beyond a reasonable doubt of his guilt. *Held* no error.

3. CRIMINAL LAW—TESTIMONY OF JURORS TO IMPEACH VERDICT.—A juror cannot be examined to establish a ground for a new trial, except to establish that the verdict was made by lot.

Appeal.from Garland Circuit Court; *Scott Wood,* Judge; affirmed.

*George P. Whittington,* for appellant.

1. The court erred ruling that the juror who was related to the witness, Dr. King, was a competent juror, thereby compelling appellant to exhaust a challenge.

2. The statements made by the foreman of the jury in open court prior to the return of the verdict, make it clear that the verdict was agreed upon only in pursuance

of an agreement by the jurors that a suspension of sentence should be recommended. These proceedings had in open court and made a part of the record, independently of the testimony of the jurors afterwards, which was introduced without objection on the part of the State, establishes the fact that the verdict would not have been arrived at, had there not been such agreement. C. & M. Digest, § 3219.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assisstants, for appellee.

1. Relationship of a juror to a witness is not a disqualification. 16 R. C. L. § 77, p. 259; 87 S. C. 434; 69 S. E. 1077, Am. Cas. 1912B, 1057 and note; 100 Ark. 437; 74 *Id.* 286; 58 *Id.* 363; 16 R. C. L. § 106, p. 292; 123 U. S. 131; 17 Stand. Ency. Proc. § 6, pp. 256-257.

2. At the hearing on the motion for new trial, the testimony of the jurors did not establish that the verdict was made by lot, and their testimony was therefore incompetent and inadmissible. C. & M. Dig. § 3220; 29 Ark. 293. Lot defined: 42 N. E. 1103, 1105; 144 Ind. 86; 31 L. R. A. 835; 55 Am. St. Rep. 168; 49 Ala. 396; 114 *Id.* 34; 137 *Id.* 101; 74 N. Y. 63; 1 N. Y. Cr. Rep. 252, 258. Affidavits of jurors, or other evidence of statements made by them, after the trial, is not competent to impeach a verdict in which they have joined. 59 Ark. 132; 70 *Id.* 244; 35 *Id.* 109; 15 *Id.* 403; 126 *Id.* 562.

WOOD, J. The appellant appeals from a judgment of conviction for carnal abuse. He presents two questions for our consideration.

1. Gibbons King, while being examined as to his qualifications to sit as a juror, in response to questions asked him by counsel for appellant, stated: That he was related to Doctor King, one of the witnesses in the case, and that his relationship might affect him in reaching a verdict. He further stated, in response to questions by the court and counsel, that he would not give any more credence to the testimony of Doctor King than he would

give to any other credible witness. He stated that his personal knowledge of Doctor King and relationship to him might determine him to be a credible witness as compared with any other witnesses and cause him to give greater credibility to his testimony.

The court held that the juror was qualified, to which counsel for appellant objected, and appellant excused the juror. The appellant afterward exhausted all his peremptory challenges. The appellant duly excepted to the ruling of the court in holding the juror, King, qualified. The court did not err in its ruling. The testimony of Doctor King only tended to prove that he made a vaginal examination of the prosecuting witness and found that her hymen had been ruptured, but there was nothing to indicate whether she had had sexual intercourse three or four days before. His testimony did not tend to prove any fact connecting the appellant with the commission of the offense charged against him, and the appellant did not attempt in any manner to controvert his testimony. Besides, the answers of the juror to the questions propounded by the court and counsel showed that he was an impartial juror and would not, on account of his relationship to Doctor King, be biased against the appellant in the consideration of his case; that he would not give any greater credence to the testimony of Doctor King on account of his relationship to him than he would that of any other credible witness.

2. The record shows that, after deliberating for some time, the jury returned to the courtroom, and, upon being asked if they had reached a verdict, the foreman responded: ''We could arrive at a verdict, but, on account of this defendant having a wife and child, we do not feel like, under the circumstances, inflicting the penalty, but we could arrive at a verdict if what we recommend to the court would be given any consideration as to suspending sentence or making it so that his wife and child wouldn't suffer while he was taken away from them.''

To this the court responded: "Well, the court wouldn't feel like making any agreement about it, gentlemen; you will just have to do your duty regardless of that. You haven't a right really to consider those things. The question is just one of guilt and innocence." To this the foreman responded: "Of course, we understand that, but we didn't know whether you could enter into that kind of an agreement with us or not." The court replied: "I do not feel like the court ought to enter into an agreement of that kind. On a question as to the amount of punishment, you could consider that, of course, but the law fixes the minimum punishment; you have a right to fix that at anything within the range which the law prescribes. If you find the defendant guilty, then as a matter of course a punishment ranging in between one and twenty-one years follows. You can now retire. It is your duty to come to a verdict if the evidence convinces you beyond a reasonable doubt of his guilt."

The appellant objected and excepted to the rulings of the court. The jury retired to further consider their verdict, and later returned into court and rendered the following verdict: "We, the jury, find the defendant guilty as charged, and fix the punishment at one year in the penitentiary."

Afterward the appellant filed his motion for a new trial, and assigned as one of the grounds of his motion "that the court erred in giving its instruction to the jury when they returned to the courtroom after having deliberated for a considerable length of time, and which proceeding was had in the following manner:" (Setting forth the proceedings as above.) To sustain this ground of his motion the appellant introduced as witnesses before the court several of the trial jurors, who testified substantially to the effect that the jury had not agreed upon a verdict of guilty at the time they sought information from the court as to whether or not the court could suspend sentence before the jury returned a verdict of guilty. One juror said: "We took the points of

the case into consideration and decided that we could come to a verdict and petition or ask the judge to stay the sentence.'' Before that they had not come to a verdict. Some of the jurors in the consideration of their verdict offered that as an inducement to finally agree on a verdict of conviction. One of the jurors further stated that, after taking the evidence of the case into consideration, they agreed to come to a verdict and then petition for a stay of the sentence. The agreement to petition the court for a stay of the sentence and to return a verdict of guilty ''all came in together and was discussed at the same time.'' The purpose of the agreement to petition the judge for a stay of the sentence was ''to bring about an agreement on the verdict of conviction.'' This juror further testified that the court informed the jury, when they sought the information, that ''the verdict would have to be reached before anything could be done.'' They went back to the jury room and afterward returned their verdict.

The juror further stated: ''My understanding of it was that, by reaching a verdict and coming to a verdict, that the judge should be petitioned afterward to stay the sentence.'' He further stated, in response to a question by the court: ''The jurors were all agreed on the facts of the case, and thought from the evidence that the defendant had carnal knowledge of this prosecuting witness according to the testimony. Up to the time the agreement was entered into to seek information from the court, some of the jurors had voted on all votes taken on the question of guilt or innocence 'not guilty.' ''

Another one of the jurors stated that, after the jurors couldn't get together, they went into an agreement to petition the judge. ''They thought the punishment was too severe, and the fellows that were not for 'guilty' wouldn't agree to anything, and that agreement to petition the judge brought the jurors who prior to that time were voting for 'not guilty' to vote for a verdict of 'guilty.' '' It was the information of this juror that the

verdict of "guilty" would not have been agreed to by all of the jurors but for the agreement by all of them to petition for a stay of the sentence.

The ruling of the court was correct. At the time the verdict was rendered the appellant did not ask to have the jury polled, which he had the right to do. If he had done so, and any of the jurors had answered that the verdict returned was not their verdict, then the verdict could not have been received. Section 3216, C. & M. Digest.

The proceedings, to which the appellant objects, were brought to the attention of the court after the verdict had been received and the jury discharged. The only testimony by which appellant sought to impeach the verdict was by the jurors themselves. "A juror can not be examined to establish a ground for a new trial, except it be to establish as a ground for a new trial that the verdict was made by lot." Section 3220, C. &. M. Digest; *Pleasants* v. *Heard,* 15 Ark. 403; *Fain* v. *Goodwin,* 35 Ark. 109; *Smith* v. *State,* 59 Ark. 132; *Griffith* v. *Moore,* 70 Ark. 244; *Wilder* v. *State,* 29 Ark. 293; *Williams* v. *State,* 66 Ark. 264; *Hampton* v. *State,* 67 Ark. 266; *Osborne* v. *State,* 96 Ark. 400. See, also, *Capps* v. *State,* 100 Ark. 109; *Jenkins* v. *State,* 131 Ark. 312; *Kindrix* v. *State,* 138 Ark. 594; *Speer* v. *State,* 130 Ark. 457-464.

The appellant does not contend, and indeed it could not be contended, that the testimony of any of the jurors proved that the verdict was arrived at by lot. There was no element of chance, hazard, or fortune in the method by which the verdict was decided, as shown by the testimony of the jurors. "Lot" is defined to be "a contrivance to determine a question by chance or without the action of man's choice or will." Webster's Dict.; *Chavannah* v. *State,* 49 Ala. 396; *Loiseau* v. *State,* 22 So. 138; *Johnson* v. *State,* 34 So. 1019. See also *Lynch* v. *Rosenthal,* 144 Ind. 86; 42 N. E. 1103, 31 L. R. A. 835.

In *Speer* v. *State, supra,* at page 464, we said: "Lot involves an element of chance." To allow a verdict to be impeached in the manner herein attempted would contravene the statute and be subversive of a sound public policy which the statute was intended to conserve.

The judgment is correct, and it is therefore affirmed.