JAMES CHARLES MCCLAIN *v.* STATE OF ARKANSAS

5423                                    444 S. W. 2d 99

Opinion delivered September 2, 1969

*John F. Stroud, Jr.,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston, Mike Wilson,* Asst. Attys. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellant, James Charles McClain, was charged by Information filed in the Circuit Court of Miller County with the crime of robbery, allegedly committed at the 7-11 Food Store in Texarkana. He was tried on February 4, 1969, before a jury, found guilty, and his punishment was fixed at 12 years' confinement in the state penitentiary. From the judgment so entered comes this appeal.

The proof reflects that at approximately 10:30 P.M., on Christmas Eve, 1968, a lone person entered the 7-11 store, and forced Mrs. Tony Smith, an employee of

the store, at gunpoint, to give to him the money contained in the two cash registers. As the gunman was leaving, another man, Charles Wagner, entered and saw the robber. Shortly thereafter, police officers obtained a description of the gunman from both Mrs. Smith and Wagner. Four days later, George Sewell, of the Texarkana police force, showed Mrs. Smith a picture of a suspect (a "mug shot"), but Mrs. Smith said that he was not the robber. A day or two later, another picture, also a "mug shot," of another man, was shown to Mrs. Smith, but she made the same answer.[1] On December 31, Sewell and officer Jim Pinson took a third picture to Mrs. Smith, this picture being of appellant.[2] Sewell testified that, when the picture was placed in front of her on the counter, she jumped back, threw a pencil that she was holding, and said, " 'G-- D---, that is the one that robbed me.' And she just broke down and went to crying, and just went all to pieces. At that time we were unable to get any calmness from her. She was shook up and in an almost state of shock." At the time, McClain was being held in the Shreveport, Louisiana, jail, and had waived extradition proceedings to return to Arkansas because of a charge that had been lodged against him at Mena. After being charged with the Miller County crime, counsel for appellant filed a motion to suppress the testimony of Mrs. Smith, relative to the pre-trial identification of appellant from the photograph, it being asserted that the procedure used in presenting the photograph suggested to Mrs. Smith

---

[1]"Mug shot" is slang for a picture taken of a suspect while he is in custody of the police. In viewing the pictures, Mrs. Smith took a match box and placed it on the forehead, because of the fact that the robber was wearing a toboggan cap at the time of the holdup.

[2]Actually, Sewell testified that they exhibited two pictures to Mrs. Smith, one, a front view, and the other, a side view of appellant. Mrs. Smith testified that she only saw one picture, the front view, possibly meaning she only examined this picture. Sewell said that Mrs. Smith was so upset when shown the picture that she evidently did not recall the second one. The pictures had been obtained from the Texas City Police Department, which had made mug shots of McClain in September of 1967.

that appellant was the person who robbed her. Appellant principally relied upon the case of *Simmons* v. *United States*, 390 U. S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967. After taking the evidence of Sewell, Mrs. Smith, and Walter Weir, a detective with the Texarkana, Arkansas, Police Department, in chambers, the court said:

"I fail to find that the identification procedures by exhibiting the photographs were so impermissibly or unnecessarily suggestive as to give rise to a very substantial likelihood of irreparable mis-identification, which is what I understand the standard to be * * *."

The motion was denied, and the case proceeded to trial before the jury. There, Mrs. Smith and Sewell testified, and Mrs. Smith identified appellant in the courtroom as the man who had held the gun on her and robbed the store. No testimony, or evidence of any nature, was offered on behalf of appellant.

For reversal, it is first asserted that the motion to suppress the testimony of Mrs. Smith relative to her identification of appellant should have been sustained inasmuch as the photograph identification procedure employed by the officers was so impermissibly suggestive as to give rise to a substantial likelihood of irresponsible misidentification. It is then asserted that the in-court identification of appellant by Mrs. Smith should not have been allowed because the improper photograph identification tainted the in-court identification for the reason that the witness was apt to retain in her memory the image of the photograph, rather than the person actually seen. We proceed to a discussion of these points.

In *Simmons* v. *United States, supra,* the United States Supreme Court said that circumstances involved in pretrial photograph identification procedure could be so unduly prejudicial as to call for a reversal of a judgment of conviction. The court stated that it was unwill-

ing to prohibit the use of initial identification from a photograph, and mentioned that this procedure had been used widely and effectively in criminal law enforcement. It was pointed out that the danger of a conviction based on misidentification could be substantially lessened by a cross-examination at trial which exposed to the jury the method's potential for error. It was then stated:

"Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

The court held that Simmons could not prevail in his contention, but appellant points out factual differences between that case and the present one, and suggests that *Simmons* sets a standard not met by the evidence in the case before us, and this being true, the trial court should have granted the motion to suppress. He then lists factual differences as follows:

"1. The robbery occurred in the afternoon in a well-lighted bank;

2. The robbery was witnessed by five employees for almost a period of five minutes;

3. The photographs were shown a day later while memory was still fresh in employees minds;

4. At least six photographs were displayed to each witness. These consisted primarily of group photographs with the defendants each appearing several times in a series;

5. There was no evidence that the FBI Agent in any way suggested which persons in the pictures were under suspicion;

6. The robbers were still at large and the FBI Agents had to determine if they were on the right track; and

7. None of the witnesses displayed any doubt about their respective identifications of the Defendant in viewing the photographs in that trial where each identified Defendant as the person.''

It might be here stated that, though some other cases are also cited, *Simmons* is by far the strongest support for appellant's position; in fact, it would seem that the procedure followed in the photograph identification was almost perfect,[3] and it might be added that the identification methods in the other cases called to our attention were not nearly so thorough.[4] As a matter of fact, there would be but few cases where the circumstances supporting identification could be more cogent than in *Simmons*. Let it be remembered that *Simmons* does not require five witnesses—or that the photographs be shown no more than a day later—or that six photographs be displayed to the witnesses; rather, the holding was simply that each case must be considered on its own facts.

Appellant first complains that the showing of the picture of just one person to the witness flagrantly violated the standard in *Simmons,* and that this procedure presents a clear danger of misidentification. It is true that the photograph of only one person *at a time* was shown to Mrs. Smith, but it is also true that photographs of two other suspects were earlier shown to her within a three-day period. All of the pictures were photographs of persons that the police considered in line with the general description. The testimony reflects that Mrs.

---

[3]There was only one suggestion by the court for improvement in the procedure followed, this suggestion being found in Footnote 6 of the opinion.

[4]Nonetheless, we have found only one case where the procedure employed in photograph identification occasioned a reversal.

Smith very quickly rejected the first two photographs as not being the person who entered the store.

It is also argued that the use of the "mug shot" of McClain was prejudicial, suggesting as it did that this man was already being held in jail, and was a criminal. It is admitted that the use of "mug shots" does not, in itself, violate the *Simmons* standard, but appellant says:

"* * * however, when coupled with the fact that the 'mug' shot of just the Defendant and no one else was shown to the witness for comparison in her identification of the robber, the cumulative effect results in an abrasive violation of the *Simmons* standard."

Here, again, this was not the only picture of that type exhibited to Mrs. Smith for identification; the first two photographs presented to the prosecuting witness were also "mug shots." It would not thus appear that appellant was prejudiced, because of the particular photographs presented. Under appellant's reasoning, Mrs. Smith would have been more apt to have chosen the first picture shown. In *Saville* v. *United States*, 400 F. 2d 397, eight "mug shots" were shown to a witness, and she identified the defendant from the eight pictures, though it was pointed out in a concurring opinion that the picture selected was the only one where the person pictured had grey hair or was wearing a parka, as defendant had been described.[5] Perhaps the showing of a group picture, including a suspect, would be preferable, but such pictures are not always available.

It is argued that the Texarkana police unwittingly communicated to Mrs. Smith the thought that appellant was the robber. This assertion is based on the fact that one of the officers said: "We have another picture we want you to look at and see if this was him." We fail

---

[5]The opinion recited that the conviction was sustained under another identification, but the court refused to find that the defendant was prejudiced because of the identification herein described.

to see how this remark could have had any effect on the witness. As each separate photograph of the three men was presented to her, she certainly knew that the officers thought there was a possibility that each could have committed the robbery, else the pictures would not have been shown to her.

Appellant next says that the amount of time the witness has to observe the perpetrator of the crime is a circumstance that must be weighed in determining whether the photographic procedure was impermissibly suggestive. Mrs. Smith first testified that the period of time of the robbery was probably about ten minutes, but on cross-examination, she admitted that the time could have been considerably less, possibly within a minute or two.

It is pointed out by appellant that only Mrs. Smith was able to identify the appellant from the photograph; Mr. Wagner, who had seen the robber leave the store was unable to positively identify the picture as a likeness of the person he saw leaving.[6] This is not surprising, since one was going out the door as the other entered, and, of course, there was no reason for Wagner to particularly notice the man leaving, since he was not, at that time, aware of the robbery.

It is also mentioned by appellant that the testimony of the officers and Mrs. Smith, relative to her actions at the time she was shown the photograph of McClain, was conflicting, the police testimony being to the effect that when she saw the picture she practically went into hysterics, threw a pencil which she was holding in her hand, broke down and started crying, and seemed to be in a

---

[6]Mrs. Smith had described the robber to the police as follows: 30 to 35 years old, 5 feet 4 inches in height, 135 pounds, light brown hair, medium complexion. Mr. Wagner, who, of course, only saw the robber as they passed, gave the following description: 22 to 27 years old, 5 feet 5 inches tall, 145 to 150 pounds, brown hair. Actually the appellant is 36 years old, 5 feet 7 inches tall, and his hair is a reddish brown.

state of shock. Mrs. Smith testified that she did not say anything until she had placed the match box on top of the picture. She admitted the use of the profanity, mentioned by the officer, but denied the other actions. Whether Mrs. Smith started crying, or nearly went into hysterics, is not really the important point; all three agreed (Mrs. Smith and the officers) that the identification was positive, and expressed without the slightest hesitation or equivocation and without any prompting whatsoever.

It is vigorously argued that the courts have placed emphasis on the fact, when approving photograph identification, that the defendants were at large, and that it was necessary for the police to immediately determine whether they were on the right track. Here, the suspect was in custody of the Police Department in Shreveport, Louisiana, and appellant states that the officers knew that he had already waived extradition to Arkansas on another charge. Accordingly, says appellant, there was no necessity for the officers to act swiftly, and there was no need to present the photographs to Mrs. Smith for identification; within a few days, she could have viewed the suspect in a line-up. We do not find anything in the record which establishes that the Texarkana Police Department knew that McClain had already waived extradition proceedings, and would accordingly be returned to Mena within a short time. Of course, it would not be logical to initiate steps to extradite a suspect, simply because he answered the general description given by Mrs. Smith to the officers at the time of the robbery. She had already said that the first two pictures shown her were not pictures of the robber, and it certainly seems that it would have been premature, and a little foolish, to have gone to Shreveport and returned McClain, perhaps after hearings,[7] simply to give Mrs.

[7]McClain might have resisted extradition to this state when he learned that this additional charge was pending, and it is almost certain, with Arkansas offering nothing more substantial than a general description, and no identification, extradition would have been refused.

Smith a chance to look at him in person. At any rate, this is only one circumstance, and we do not think even if the Texarkana police knew that the man was to be returned to another Arkansas county, that the evidence should be suppressed because of that fact.

Admittedly, the circumstances here are not so strong as those in *Simmons,* but we reiterate that that case is an example of the *ideal* circumstances for identification—not the *required* quantum of evidence. Of course, there are cases of all types, including murder cases, where the circumstances present almost a perfect case; in others, the evidence is not nearly so strong— but that does not mean that the defendants in the latter cases should be released because the evidence does not measure up to the proof in the first mentioned category.

The state, on trial before the jury, did not rely upon Mrs. Smith's photograph identification. This was not mentioned in the direct evidence offered by the Prosecuting Attorney. The facts relative to that occurrence were originally brought out by appellant on cross-examination of the state's witnesses. Mrs. Smith, as previously mentioned, identified appellant in court as the robber, and appellant was endeavoring to show that the in-court identification was suggested, and was really dependent upon the identification of the photograph, *i. e.,* that she simply recognized appellant as the same man who appeared in the photograph.

Mrs. Smith was very positive that her in-person identification had no connection with the identification of the photograph: ''Anybody that has a gun stuck in my face, I'm going to remember that face, * * * If I had never seen that photograph, I could still recognize him.'' Having held that the identification procedures employed were not impermissibly suggestive, it follows that the second point is also without merit.

The testimony of Mrs. Smith relative to the rob-

bery, set out in the statement of the case, and the in-court identification were sufficient to make a jury question, and the jury found that the crime had been committed, and appellant perpetrated the robbery.

Affirmed.