RICHARD MONROE SIMS *v.* STATE OF ARKANSAS

CR 73-6                                    463 S.W. 2d 449

Opinion delivered April 16, 1973

*Howard, Howard & Howard,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Frank B. Newell,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. Richard Monroe Sims was convicted at a jury trial for armed robbery and was sentenced to 25 years in the penitentiary. On appeal to this court he contends that the trial court erred in permitting the witness, Mrs. Clinney Vick, to identify him through photographs furnished by the prosecuting attorney's office.

Mrs. Maria Smith testified that on January 24, 1972, she was employed at Majestic Cleaners at Third and High Streets in Little Rock; that she had just returned to her job from lunch when two young Negro men came into the place and requested change for a dollar. She said when she opened the cash register to obtain the change, she was ordered at pistol point to the back of the building. She said a third man then entered the place and while one of the men tied her feet the other two took the money from the cash register. She was unable to identify the appellant as one of the participants.

Mrs. Clinney Vick, testifying for the state, said that on January 24 about 11:30 in the morning, she was standing in the backdoor of the Capitol Hill Apartments where she lives when three young men came through the lobby and asked her if she had a cleaning and pressing establishment in the building. She said she hardly had time to answer in the negative when one of them said: "I see it, Oh I see it, I see it," and that all three then went down to the Majestic Cleaners, which was located across a parking area about 50 feet from the apartment building. At this point in the trial the jury was recessed and the court, the attorneys, the appellant and his mother, retired to chambers where Wilbur C. Bentley, assistant prosecuting attorney, was questioned concerning the photographs that are in issue in this case.

Mr. Bentley said that in the course of his investigation he learned that Mrs. Vick may have seen three black males just immediately before the alleged robbery, so he requested her to come to his office for an interview. He said he had never seen Mrs. Vick before but that he identified himself and told her he understood she had seen some men in the vicinity of the robbery. He said he showed her six photographs and asked her whether she had seen any of the men in the photographs shortly before the robbery. He said that Mrs. Vick identified appellant Sims and one of his accomplices (tried separately) as two of the three men she saw on that occasion.

The photographs were accepted in evidence for the record at the in-chambers hearing, and Mrs. Vick testified that the three men she observed were within two or three feet of her and that she thinks she would recognize them if she saw them again. Mrs. Vick then identified the appellant in chambers as one of the persons she saw on that occasion. She said the appellant was the one who asked her about the cleaning and pressing shop. Mrs. Vick was then asked if she had been shown a picture of the appellant previously and she said that she had. Under questioning by the court she then testified that Mr. Bentley showed her about three or four pictures and that the appellant's picture was among the ones shown her. She then testified under questioning by the court, as follows:

"THE COURT: Could you recognize this defendant independently of having seen the pictures?

A. I think he is the one I saw the picture of.

THE COURT: All right. I know he's the one you saw the picture of, but is he the person that you saw on the 24th?

A. Yes, at my place.

THE COURT: At your place?

A. That's right.

THE COURT: And you could recognize him, whether you had seen the picture or not?

A. I think so."

Mrs. Vick was further questioned by the prosecuting attorney as to circumstances surrounding her identification of the appellant and she was asked and answered questions as follows:

"Q. Mrs. Vick, is there any doubt in your mind that the man sitting here, Monroe Sims, any doubt at all whether he is the same man that spoke to you in your lobby on January 24th?

A. No, sir; there's no doubt in my mind that he's the one.

Q. What you are saying to us based entirely on what you saw that day and not on having seen any photographs in the Prosecutor's office. Is that accurate?

A. That's right."

Mrs. Vick was then again shown the photographs and again identified the picture of the appellant. She testified that she did not remember the exact day or hour she

saw the appellant at the apartment building but that about 15 minutes after she saw the appellant and the other two men, someone told her that the cleaning establishment had been robbed. The record then discloses the conclusion of the in-chambers hearing as to the identification of photographs as follows:

"MR. TUCKER: If it please the Court, the State will move, Your Honor, that while this witness is on the stand that she be permitted to make in Court identification of the defendant, Monroe Sims.

MR. HOWARD: If the Court please, we object to all this identification procedure as being suggestive and unfair, inappropriate. The fact of identification, they could have had this woman view the lineup with this man in it which was available to them at all times. The identification of photographs certainly is not admissible. The photographs themselves are not admissible before the jury. We would ask the Court to not permit this witness to testify to anything other than this man's identity if she can identify him from the witness stand.

THE COURT: All right. The Court finds that the photographic lineup presented to Mrs. Vick was not suggestive, that in any event she is able to identify the defendant as the person who was in the apartment house on January 24th, and her identification is not tainted in any way by the fact that she has viewed the photographic lineup; therefore, she'll be permitted to testify regarding this defendant being present on January 24th. But, she will not be permitted to refer to the photographs that were shown her on direct examination. If you are questioned by the defense attorney regarding the photographs, then you may respond."

In continuing her testimony before the jury at the conclusion of the in-chambers hearing, Mrs. Vick said that she got a good look at the individuals who inquired about the location of the cleaning establishment and especially the one who made the inquiry. She then identified the

appellant as the one who made the inquiry. She said the cleaning establishment was not connected to the apartment house where she lives but was just across a small parking lot from it and that the buildings were approximately 50 feet apart.

Sims made an incriminating statement to the police officers admitting his participation in the robbery. The statement was written out by one of the police officers and signed by Sims who wrote in his own handwriting at the end of the statement: "This statement is true and correct to the best of my knowledge." An in-chambers hearing was had in connection with the statement and the trial court found that it was voluntarily made and admissible in evidence.

The appellant argues that it was grossly unfair, and in violation of his constitutional rights, for Mrs. Vick to identify the appellant from pictures shown her by the prosecuting attorney when the appellant or his attorney was not present, and the trial court erred in permitting Mrs. Vick to identify the appellant as the one she saw near the scene of the crime immediately prior to its commission. He argues that such identification without the appellant's attorney being present, was in violation of the United States Supreme Court decisions in *United States v. Wade*, 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, and *Gilbert v. California*, 388 U. S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951.

In the case at bar Mrs. Vick simply identified the appellant's picture in the prosecuting attorney's office, as among the six pictures shown to her. She then also identified him from the witness stand and the fact that she had first identified his picture was not mentioned in the presence of the jury. In *Montgomery v. State*, 251 Ark. 645, 473 S.W. 2d 885, the defendant was identified in a police lineup and later identified at the trial of the case, and in that case we found no merit in the appellant's insistence that he was denied the assistance of counsel at the lineup where there was no proof that he asked for or was entitled to the aid of an attorney at those times and, on this point we distinguished *United States v. Wade*,

*supra,* pointing out that in *Wade* the police knew that the accused already had engaged an attorney, yet they continued the lineup without notice to the attorney. In *Montgomery* we pointed out that we failed to read the *Wade* opinion as holding that every lineup identification in the absence of a lawyer is necessarily a denial of an accused's right to be represented by counsel. In the case of *James E. Crawford* v. *State of Arkansas,* being handed down today, one of the points relied on was alleged error of the trial court in refusing to exclude testimony relating to pretrial lineup which was held without defense counsel being present. The appellant in that case, as in the case at bar, contended that showing of pictures to the prosecuting witness prior to the lineup was impermissibly suggestive. We held the point to be without merit because there is no contention that the photograph identification procedure gave rise to probable misidentification. In that case we cited *McClain* v. *State,* 247 Ark. 33, 444 S.W. 2d 99, in which the prosecuting witness identified the appellant from photographs submitted to her and later identified him at the trial. In *McClain* the photograph identification was brought out on cross-examination of the witness but in that case we found that the identification procedures were not impermissibly suggestive. In the case at bar the prosecuting witness simply identified the appellant's picture as the man who made inquiry as to the location of the cleaning establishment immediately prior to the time it was robbed, and she still recognized, and positively identified, him in the courtroom at the trial.

In *Gilbert* v. *Calif., supra,* the attorney for the accused requested a hearing outside the presence of the jury to present evidence supporting his claim that the prosecuting witness' in-court identification and other identifications to be elicited by the state from other eye witnesses would be "predicated at least in large part upon their identification or purported identification of Mr. Gilbert at the showup. . . " The trial judge over-ruled the motion and in that case the court said: "The admission of the in-court identifications without first determining that they were not tainted by the illegal lineup but were of independent origin was constitutional

error." The accused in *Gilbert* also had counsel and the lineup was conducted without notice to his counsel. There were many other details in the *Gilbert* case that clearly distinguish it from the case at bar.

The judgment is affirmed.