## HALL *v.* STATE.

### Opinion delivered May 15, 1897.

HOMICIDE—EVIDENCE.—In a murder trial evidence that defendant's wife at the time of his arrest, and before she was informed as to the cause of such arrest, volunteered the statement that defendant "was not there," meaning that he was not present when deceased was killed, was inadmissible. (Page 124.)

SAME—CUMULATIVE EVIDENCE.—It is error in a capital case to exclude evidence that is cumulative of the testimony of an accomplice, especially where the excluded evidence is of a more definite and circumstantial character than that of which it is cumulative. (Page 124.)

Appeal from Lee Circuit Court.

H. N. HUTTON, Judge.

#### STATEMENT BY THE COURT.

The appellant was convicted of the murder of W. R. King at about 8 o'clock on Friday night of October 18, 1895. He was indicted jointly with Sol Gibbs, Jim Osbrook, and Hosea Perkins. A severance was allowed, and Sol Gibbs was tried first, and upon his confession was convicted of murder in the first degree.

The evidence shows that the deceased, King, at the time he was killed, was at the residence of Whitmore, for the purpose of getting a tap off an old buggy, and that he and Whitmore had gone to the buggy in the yard, with a lantern, and while there, as Whitmore testified, a gun was fired, and that he looked and saw three men turn and run off from the spot where the gun was fired, which he afterwards found was twenty-seven yards

from the place where King and he were standing at the buggy; that, although the moon was not shining, he saw from the light of the elements the three men run off, and that the man who fired the gun was broad-shouldered, and wore a light colored hat; that five buckshot from said discharge of the gun struck witness, and seven struck King, who died the next morning.

Sol Gibbs swore that he, the appellant, Jim Osbrook, and Hosea Perkins were together when the shooting was done; that they had gone to Whitmore's on the occasion, pursuant to a former agreement, as he understood, to whip the Whitmores, and that they took the gun along to defend themselves, if resisted; that Osbrook had the gun, and asked who was going to do the shooting, when Hosea said he was too old, and he (Gibbs) said he did not know the Whitmores well enough, when Wes. Hall said: " Well, damn them, I shot them once, and can shoot them again."

Hosea Perkins, when tried, was acquitted, and Jim Osbrook was tried and acquitted. Hosea Perkins testified that he was not present, and had nothing to do with the shooting in any way.

Jim Osbrook testified that Sol Gibbs' testimony was false, so far as it connected him with the killing or shooting of King; that he had no acquaintance with Sol Gibbs or Wes. Hall; that he knew nothing of the shooting at Whitmore's that night; knew King and Whitmore when he saw them, but that was all; remembered the night when the shooting was said to have occured; heard of the shooting next morning the first time. "I staid that night at Henry Bailey's house, five miles distant from Whitmore's. I slept in the bed that night of the shooting with Henry Bailey's grown son, William Bailey, and left their house between daylight and sunrise the next morning."

Perkins, Osgood and Hall each deny any agreement to whip Whitmore, and also deny any connection with the shooting, or any agreement about the same.

Henry Bailey testified that Jim Osbrook stayed at his house all night from about dark till daylight next morning. Cinda Bailey testified to the same.

Counsel for defendant Hall then offered to prove by Mag Bailey, William Bailey, Ellis Bailey, and Viola Ward that Jim

Osbrook spent the entire night of October the 18, 1895, at Henry Bailey's house, and by said William Bailey that he slept in the same bed with Osbrook that night. But the court held the testimony would be cumulative as impeaching testimony, and refused to allow it, to which the defendant at the time excepted.

On the trial the state was allowed to prove that when Hall, the defendant, had been arrested, and was in custody of the officer with Gibbs, the wife of Hall came to where they were, and, without being informed of the cause of their arrest, spoke and said, "Mr. Hall was not there," and the defendant objected to this testimony, and moved to exclude it from the jury, which motion the court overruled, and refused to exclude said testimony from the jury, to which the defendants excepted at the time, and incorporated said objections and exceptions in his motion for a new trial, which the court overruled, to which defendant excepted, filed his bill of exceptions, and appealed to this court.

*James P. Brown*, for appellant.

It was error to admit as testimony the remark of Hall's wife. 34 S. W. Rep. 945; 29 *id.* 700; 19 S. E. Rep. 244. It was also error to exclude William Bailey's testimony. It was entirely cumulative.

*E. B. Kinsworthy*, Attorney General, for appellee.

It was not error to admit the wife's statement, made in his presence. 61 Ark. 593; 30 Ala. 24. The evidence of William Bailey was cumulative merely. Underhill, Ev. p. 3; 20 Conn. 305; 43 Iowa, 175; 10 Wend. (N. Y.), 286, 294. The amount of cumulative evidence allowed is within the sound discretion of the court. No abuse of discretion is shown here. 28 S. W. Rep. 459; 15 S. W. Rep. 573; 36 *id.* 900; 18 So. Rep. 117; 33 Tex. Cr. R. 217.

HUGHES, J., (after stating the facts.) Though the testimony in this case was shadowy, and not of a character the most satisfactory, yet it was the province of the jury to weigh and pass upon it, and we cannot say there was no testimony upon which they might have found a verdict of guilty.

But the court is of the opinion that the circuit court erred in permitting the testimony showing that the wife of Hall said: "Mr. Hall was not there," meaning he was not present when King was shot, which statement, the testimony shows, was made in the presence of Hall, and about which he said nothing,—was silent. This was calculated to impress the jury with the idea that, though she was not informed by the officer of the cause of the arrest, yet she knew the cause, and had made the statement only to screen her husband, when in fact she knew nothing about the truth of what she stated. This was wrong, and might have prejudiced the jury, and we incline to think it did.

Refusing to allow William Bailey to testify that Jim Osbrook slept with him at his father's house on Friday night, the 18th day of October, 1895, the night when King was shot, was error. The conviction of Hall depended upon the truth of Sol Gibbs' testimony, who had sworn that Hall did the shooting, and that Jim Osbrook was present pursuant to previous agreement, aiding and abetting the perpetration of the murder. Gibbs was confessedly an accomplice, and the circumstances of corroboration were slight, and if he could be justly impeached, it was of vital importance to the defendant. It is the rule that it is within the sound judicial discretion of the court where cumulative testimony shall stop. But in a capital case especially this discretion should be cautiously exercised. *Galveston, H. & S. A. Ry. Co.* v. *Matula*, 15 S. W. 573.

Though Henry Bailey and Cinda, his wife, had testified that Osbrook staid all night at Henry Bailey's house on the Friday night that King was shot, yet this testimony was not of that definite and circumstantial character as the testimony of Wm. Bailey would have been that Jim Osbrook slept at Henry Bailey's house in the same bed with him (Willaim Bailey) who was a grown son of Henry Bailey. *Galveston, H. & S. A. Ry. Co.* v. *Matula*, 15 S. W. 573.

We think that under the circumstances of this case it was error to refuse this testimony. For the errors indicated, the judgment is reversed, and cause remanded for a new trial.