SNYDER v. STATE.

Opinion delivered February 6, 1922.

1. JURY—BIAS—PRECONCEIVED OPINION.—Where a juror, on his *voir dire*, testified that he knew the families of both the deceased and the defendant, that he knew too much about both families, that he had talked with the witnesses on both sides, and that he had a feeling which would influence him, and did not believe that he could give a fair and impartial trial, it was error to hold him a competent juror, though he subsequently stated that he could disregard that opinion and try the defendant according to the law and evidence.

2. JURY—INCOMPETENT JUROR—PREJUDICE.—When defendant's peremptory challenges were exhausted before panel of the jury was filled, the error of holding a biased juror to be competent was prejudicial.

Appeal from Pulaski Circuit Court, First Division, *John W. Wade,* Judge; reversed.

*J. A. Weas* and *Lewis Rhoton,* for appellant.

The court erred in holding jurors Holt and Riff to be qualified.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants.

Holt stated his opinion was formed from reading newspaper reports of the case, but stated he could try the case on the evidence. He was therefore qualified. 72 Ark. 613; 79 Ark. 127; 80 Ark. 113; 85 Ark. 64; 101 Ark. 443; 103 Ark. 21; 109 Ark. 450; 114 Ark. 472. Appellant cannot complain of Holt, as he entered only a general challenge to this juror. Standard Enc. of Proc., vol. 17, pages 146-149.

Juror Riff was not challenged for cause, and appellant can not now complain of him. Standard Enc. of Proc., vol. 17, pages 119-123; 100 Ark. 437; 74 Ark. 286.

The finding of the court that the jurors were competent has the same sanctity as a verdict of a jury upon a question of fact. *West* v. *State,* 150 Ark. 555.

If appellant was not satisfied with the correctness of the bill of exceptions as approved by the judge, with certain indorsements thereon, he had a remedy under § 1322, C. & M. Digest, to have the recitals corrected.

SMITH, J. Appellant was indicted for murder in the second degree, and was found guilty of voluntary manslaughter, and has appealed.

The only error assigned for the reversal of the judgment is that the court erred in holding jurors Holt and Riff competent.

We think the court properly held juror Holt to be competent, as the opinion entertained by him was shown

to have been based solely on rumor. But we think it equally clear that the juror Riff was disqualified, and that the court erred in holding him competent.

In response to the questions of the prosecuting attorney Riff answered that he knew the families of both the deceased and the defendant. He was asked if he could disregard any feeling or opinion he had and try the case according to the law and the evidence, and he answered, "I have a feeling that would influence me in arriving at a verdict." He was asked if he could lay that aside, and he answered, "No." He was asked if this feeling was based on facts or knowledge of the family, or both families, and answered, "I know too much about both families; I have a feeling that would influence me." He was then asked by the prosecuting attorney, "You don't think you could give a fair and impartial trial, regardless of the evidence?" He answered, "I don't believe I could." He was then asked by the court if he had talked with any of the witnesses, and answered that he had talked to witnesses on both sides, and that "I have discussed the case thoroughly both ways; both sides told me about the transaction." His examination thereafter was conducted by the court and is as follows: "Q. Did both sides tell the same thing about it ? A. No. Q. Did you believe both sides? A. No. Q. Did you believe one side? A. I did at that time. Q. Have you got that belief yet? A. Yes. Q. Based on having talked with them? A. Yes. Q. Is that an opinion as to the guilt or innocence of the defendant? A. It would require a good deal of evidence to remove my opinion. Q. Do you think it is a fixed opinion? A. So far. Q. Could you try the case according to the law and the evidence? A. Yes; I would have to do that. Q. If selected as a juror would you disregard any impression or opinion you might have and try it according to the law and the evidence. A. Yes. Q. You would go into the jury box and try it fairly and impartially according to the law and the evidence as if you

had never heard of it? A. Yes; I would have to do it. Q. Could you do it? Could you succeed in doing it? A. Yes; I would have to."

These last questions of the court were objected to as leading, and exceptions were saved thereto.

The court then held Riff competent, to which ruling the defendant excepted and then challenged him, and before the jury was completed exhausted her challenges.

Thereafter, one Reynolds was sworn and examined touching his qualifications to serve as a juror, and there appears in the bill of exceptions the following finding of facts made by the court in regard to the selection of Reynolds to serve as a juror in the case:

"We had much difficulty in getting a jury in this case. Mr. Rogers interrogated on *voir dire* for State and Mr. Rhoton for defense. They were both unnecessarily tedious and repeated much. The record does not purport to show all the *voir dire*. The two panels of jurors were exhausted and the bystanders, and the court waited several times for the sheriff to go out and bring in special jurors into court. All the morning was thus consumed, and much of the afternoon, before defendant exhausted all her peremptory challenges. In doing so, Mr. Rhoton said to the court, I have excused good men in order to exhaust my challenges. I am now ready to accept most any bystander after making formal objection. Thereupon the sheriff called juror Reynolds, and Mr. Donham, of the prosecuting attorney's office, said to the court that the State does not want him and will excuse him. To which the judge replied, "If that is what you are going to do, accept him, and out of abundant caution I will reverse my ruling on the juror Riff and excuse him for cause and thereby give the defendant an opportunity to excuse Reynolds peremptorily." The juror Reynolds was then interrogated by both sides and accepted by the State, when Mr. Rhoton, to the surprise of the court and prosecutor, promptly accepted the juror. He never objected to him but accepted him. The court

then and there in the presence and hearing of counsel commanded that the record show that the juror had been accepted by the defendant. Mr. Rogers inquired aloud what the court had said, whereupon the command was repeated. At no time did counsel for defendant object to or do or say anything about it. The court thereupon concluded that the juror Reynolds was acceptable to the defendant, and the court is of the opinion that the State could not excuse him after they accepted because defendant's peremptories were exhausted. The court still believes jurors Riff and Holt competent and qualified, but would have removed any possible doubt about it had not defendant accepted juror Reynolds under the circumstances just detailed.''

Upon consideration of this record, we think the court should have held Riff disqualified. Notwithstanding his answer that, if he was accepted as a juror, he would have to try the case according to the law and the evidence, it clearly appears that he had a fixed opinion on the merits of the case, based upon a narrative of facts traceable to a definite source—the witnesses in the case—on both sides of the case. Riff should therefore have been excused as disqualified. *West* v. *State,* 150 Ark. 555; *Collins* v. *State,* 102 Ark. 180; *Caldwell* v. *State,* 69 Ark. 322.

It is insisted by the State that Riff was not first challenged for cause before being challenged peremptorily. Challenges are of two kinds, first, to the panel; second, to the individual juror. Section 3151, C. & M. Digest. The challenge to the individual juror is, first, for cause; second, peremptory. Section 5153, C. & M. Digest. Challenges for cause may be general or particular. Section 3156, C. & M. Digest. Causes for general challenges relate to the right of the juror to serve in any case and are, first, a want of the qualifications prescribed by law; second, a conviction for a felony; third, unsoundness of mind, or such defect in the faculties of

the mind or organs of the body as renders him incapable of properly performing the duties of a juror. Section 3157, C. & M. Digest.

Particular causes of challenge are actual or implied bias. Section 3158, C. & M. Digest.

"Actual bias is the existence of such a state of mind on the part of the juror in regard to the case, or to either party, as satisfies the court, in the exercise of a sound discretion, that he can not try the case impartially and without prejudice to the substantial rights of the party challenging." Section 3159, C. & M. Digest.

Implied bias is a bias arising by implication of law from any of the relations or conditions set out in section 3160, C. & M. Digest, which need not be recited here.

Either actual or implied bias is made a ground for challenge on the part of either the State or the defendant. In addition to these challenges for actual or implied bias, the State is given ten peremptory challenges, and the defendant twenty peremptory challenges, in the trial of felony cases. These peremptory challenges may, of course, be used by the State or by the defendant for any reason and without assigning a reason. An indefinite number of challenges for cause may be interposed by either the State or the defense, but only the statutory number of peremptory challenges can be used. When these peremptory challenges have been exhausted, challenges can thereafter be made only for cause.

We think the examination of Riff set out above makes it clear that he was being examined touching his bias or the existence of such a state of mind on his part in regard to the facts in the case as would prevent him from trying it impartially and without prejudice to the substantial rights of either the State or the defendant. Section 3159, C. & M. Digest.

The record presented no question of a cause for general challenge. The only question presented for the decision of the court was that of the existence of bias.

The examination of the juror, both by the prosecuting attorney and by the court, was devoted entirely to the question of bias, and the ruling of the court, based in part on the responses of the juror to the questions of the court, could have meant only that, in the opinion of the court, the juror was not shown to have such an opinion as disqualified him from serving in the case. There was therefore no failure of the defendant to properly challenge the juror for cause.

We think there is nothing in the court's finding of facts set out above which cures the error of holding Riff competent. This ruling was never reversed. The defendant used her twentieth and last challenge before the juror Reynolds was called. She could then only challenge for cause, and not peremptorily, and the record does not show that the right to challenge Reynolds for cause existed. There was no question about the competency of Reynolds. He could only have been challenged peremptorily, and this right did not exist on the part of the defendant for the reason that she had exhausted her last peremptory challenge on Riff.

We do not understand, from the court's statement, that the conversation between the prosecuting attorney and the court occurred in the hearing of all parties concerned, in fact, the statement of the prosecuting attorney to the court that he did not want Reynolds and would excuse him, indicates that the remarks of both the court and the prosecuting attorney to each other were aside. The judge did have the record to show that the defendant accepted Reynolds, but there was nothing else for her to do, as her challenges were exhausted. As we understand the record, the court formed the purpose of reversing its ruling in regard to juror Riff, and indicated that fact to the prosecuting attorney, and this was to be done upon condition that the prosecuting attorney would not peremptorily challenge Reynolds; but the court did not announce this intention to reverse its ruling, and the defendant was not advised of it and was not therefore

in position to exercise any challenge after having exhausted her peremptory challenges. In other words, before the jury was completed, the defendant exhausted her twenty peremptory challenges by being compelled to use one of her challenges on a juror erroneously held competent. This was error and calls for the reversal of the judgment. It is so ordered.