EDWARD LEE JACKSON v. STATE OF ARKANSAS

5364                                        432 S.W. 2d 876

Opinion Delivered October 14, 1968
[Rehearing denied November 18, 1968.]

*Gary L. Eubanks* and *Phillip K. Kinsey* for appellant.

*Joe Purcell,* Atty. Gen. and *Don Langston,* Asst. Atty. Gen. for appellee.

PAUL WARD, Justice.    On the night of September 8, 1967 Edward Lee Jackson, appellant, allegedly shot and killed Charles Newman Edwards, at Perciful's Drive-In at 515 West Eighth Street in Little Rock.    He was

charged with murder in the first degree. Upon trial he was convicted of murder in the second degree and was sentenced to fifteen years in the penitentiary—hence this appeal.

*Background Facts.* On the night in question, at about eight p.m., while five or six white persons were drinking beer at the Drive-In, they heard a scream on the outside of the building. Upon investigation they saw a Negro man beating a Negro woman. The manager of the Drive-In came out and told them he was going to call the police. At about this time four Negro youths (one being appellant) offered to take the Negro man and woman away and take care of them—to which the manager agreed—but the Negro woman started to scream, and said they would kill her. Thereupon, the white people allowed the Negro youths to take the Negro man away, but told them to let the Negro woman stay. Then the Negro youths got into their car, with appellant and Raymond Henderson in the back seat. Presently several witnesses saw gun fire coming from the back seat, and one of the bullets hit Edwards and killed him. Later it was determined that appellant was the owner of a .25 caliber pistol which was found in his possession, and that Henderson was the owner of a .22 caliber pistol. It was determined that Edwards was hit (and killed) by a .25 caliber bullet, and an FBI ballistic expert testified that the bullet taken from the body of Edwards was fired from the pistol found in the possession of appellant.

Seeking a reversal of the trial court, appellants argue five separate points which will be discussed in order. First, however, we point out that appellants do not specifically question the sufficiency of the evidence.

*One.* It is first contended that the court erred in refusing to grant a mistrial. This is based on the fact the mother of the deceased was allowed to sit at the counsel table, during a recess period of the court, while

six of the jurors were in the jury box. It is also pointed out by appellant that these jurors observed her crying.

We are unable to find that any reversible error has been shown. The granting or denial of a motion for a mistrial is within the sound discretion of the trial court, and such discretion, when exercised, will not be disturbed on appeal unless shown to have been abused. See: *Briley* v. *White,* 209 Ark. 941, 193 S.W. 2d 326. No such abuse is shown here. On the contrary the allegation of facts relied on by appellant are in dispute. It is not error, per se, for near relatives of an accused person to be present (and cry) during the trial. *Tiner* v. *State,* 109 Ark. 138 (p.149), 158 S.W. 1087. To the same effect see *Freels* v. *State,* 130 Ark. 189, 196 S.W. 913.

*Two.* We find no reversible error in the court's refusal to grant a mistrial because of its alleged reprimand of appellant's counsel in the presence of the jury.

In the first place, appellant, in his argument, set out no specific objectionable conduct on the part of the court. However, we have read that portion of the transcript which deals with this incident, and find nothing to show reversible error. As previously pointed out, the matter of granting a mis-trial lies largely within the sound discretion of the trial court.

*Three.* It is here contended by appellant that the court committed reversible error in refusing to give his requested instruction no. 3 on self-defense.

This contention must be denied because appellant fails to point out any testimony (and we find none in the record) to justify the giving of such an instruction. In fact, appellant's testimony was to the effect that he was shooting at the ground and did not intend to shoot Edwards, and he was not in fear of his own life. Ark. Stat. Ann. § 41-2236 (Repl. 1964), in material part reads:

"In ordinary cases of one person killing another in self-defense, it must appear that the danger was so urgent and pressing, that in order to save his own life, or to prevent his receiving great bodily injury, the killing of the other was necessary, and it must appear also that the person killed was the assailant . . . "

There is no semblance of a showing here that appellant was in fear of being killed or injured by the deceased.

*Four.* Here, it is appellant's contention the court erred in refusing him a continuance.

Ark. Stat. Ann. § 43-1705 (Repl. 1964) provides that the court, upon sufficient cause shown, may direct the trial to be postponed to another day. This statute has been construed many times by this Court—dating from *Thompson* v. *State,* 26 Ark. 323 to *Perez* v. *State,* 236 Ark. 921, 370 S.W. 2d 613. In the first cited case the Court said that the granting of continuances in criminal cases is within sound discretion of the court, and the trial court's decision will not be disturbed on appeal "unless it clearly appears to have been an abuse of discretion". In the other cited case we said:

"There is no doubt that the granting or refusing of a motion for continuance is addressed to the sound discretion of the trial court", citing cases.

Under the record in this case we are unwilling to hold the trial court abused its discretion in refusing to grant appellant's motion for a continuance. It appears that appellant did not use due diligence in an effort to secure the fatal bullet and gun, and a ballistic report thereon. It appears appellant had three weeks time in which to do so but waited until one week before the trial before starting an investigation. The same lack of diligence appears in an effort to secure certain other

evidence. Also, there was no convincing testimony that such evidence was admissible or could be obtained.

*Five.* Finally, it is contended the court erred in refusing to quash the Petit Jury Panel. This contention is based mainly on the general assertions that: (a) there were no Negroes on the Jury Commission; (b) all Negroes on the petit jury were challenged peremptorily by the state; and, (c) the proportion of Negroes on the jury did not equal their proportion to the total population. Again, we find no reversible error.

(a) The mere showing that in this case no Negro was serving on the Jury Commission does not constitute a violation of appellant's constitutional rights. See: *Moore* v. *Henslee,* 276 Fed. 2d 876 (p. 878), 244 F. Supp. 982 (p. 986).

(b) The mere fact that the state peremptorily challenged all the Negroes on the petit jury does not constitute a showing that any of appellant's constitutional rights were violated. See *Swain* v. *Alabama,* 380 U.S. 202 (p. 221).

(c) The fact (though not proven here) that the proportion of Negroes on the petit jury which tried appellant is less than their proportion to the total population does not, alone, amount to a violation of his constitutional rights. Particularly is this true in the absence of a showing that Negroes are being spstematically excluded from the juries in Pulaski County. No such showing has been made in this case. This same contention was made in *People* v. *Cohen,* 283 N.Y.S. 2d 817 (p. 823) where we find this statement: "To sustain this contention, appellants were compelled to show that there had been a systematic and intentional exclusion . . . " In *U.S.* v. *Cohen,* 275 F. Supp. 724 (p. 743) it was stated that ". . . the inclusion of the exact proportionate representation of every group is not required".

See, to the same effect, the case of *People* v. *Henny,* 284 N.Y.S. 2d 726 (p. 730).

Finding no reversible error, the judgment of the trial court is affirmed.

FOGLEMAN, J., concurs.