Bennie BEED, Jr. *v.* STATE of Arkansas

CR 79-229                                      609 S.W. 2d 898
Supreme Court of Arkansas
Opinion delivered December 22, 1980

530

*Thomas R. Newman*, for appellant.

*Steve Clark*, Atty. Gen., by: *Victra L. Fewell*, Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Chief Justice. Appellant Bennie Beed, Jr., was found guilty of rape, aggravated robbery and kidnapping (class C) in a jury trial on June 12, 1979, and sentenced to life for rape, 50 years for aggravated robbery and 10 years for kidnapping. Appellant lists 11 points for reversal. Some of them include multiple assertions of error. We find reversible error in the jury selection and in the failure of the trial court to suppress evidence obtained by a search. In addition to these points, in this opinion we will treat only those points that will likely arise on retrial.

Appellant, under the heading of a single point, challenged the trial judge's excusal of Buck Walker and R. F. Stewart for cause, his failure to excuse Richard Bolton for cause and the misuse of peremptory challenges by the state to exclude Negroes from jury service. Appellant says that Stewart and Walker were persons of the Negro race, and that two others of that race were excused by the state by peremptory challenge. The record, however, does not disclose the race of the prospective jurors. Assuming, however, that appellant states the race of the jurors correctly, we find no error except as to juror Bolton. As far as this record discloses, the state's exercise of peremptory challenges has not been shown to be

systematic. The mere fact that the state peremptorily challenged all the Negroes on a petit jury panel does not constitute a showing that appellant's constitutional rights were violated. *Rogers* v. *State*, 257 Ark. 144, 515 S.W. 2d 79; *Brown* v. *State*, 248 Ark. 561, 453 S.W. 2d 50; *Jackson* v. *State*, 245 Ark. 331, 432 S.W. 2d 876; *Swain* v. *Alabama*, 380 U.S. 202, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965). Appellant was not entitled to any particular juror and is in no position to raise any question as to the jurors excused for cause, because he interposed no objection. *Clark* v. *State*, 264 Ark. 630, 573 S.W. 2d 622.

The excusal of Richard Bolton for cause is another matter. As the state points out in its brief, it must be considered in and of itself as a matter of law and not in juxtaposition with the excusal of other jurors. Appellant relies on Ark. Stat. Ann. § 43-1920 (Repl. 1977) which provides that a challenge for implied bias may be made where the juror is related to the person on whose complaint the prosecution was issued and Ark. Stat. Ann. § 39-105 (e) (Supp. 1979) which excludes from petit jury service any person who is prevented by any relationship from acting impartially. He points out that juror Bolton's brother Bill was the police officer to whom the complaining witness made her original complaint, a portion of which, including the description of her assailant, was related to the jury by Officer Phillips, of the Miller County Sheriff's office, who also testified before the jury that Officer Bolton had taken the statement. The trial judge had also been informed, prior to voir dire examination of prospective jurors, by testimony at pretrial hearings, that Officer Bill Bolton had assisted in conducting a "picture lineup" by presenting a folder containing six photographs, one of which was of appellant, to the victim for identification, had participated in two searches of the dwelling house in which appellant resided for evidence to be used in the trial and had developed a part of the information contained in the affidavit for the warrant on which the searches were based. There is a clear implication in the testimony of Phillips during the trial that Bolton assisted him in the entire investigation of the crimes which resulted in charges against appellant. He also told the jury that Officer Bolton assisted with the "picture

lineup." The defense in the case was alibi and mistaken iden-
tification.

On voir dire, it was disclosed that Richard Bolton had
been the victim of a crime and that he had worked for the
sheriff's department for two years. This juror stated that
should his brother be a witness, he would not be caused to
lean more heavily toward the state than toward the defendant
and that it would not be embarrassing for him to discuss the
case with his friends if he were on the jury and it should
return a verdict of not guilty. The trial judge asked Richard
Bolton if he could, withott embarrassment, serve and let the
verdict speak the truth. Appellant's challenge to this prospec-
tive juror for cause was denied. Appellant points out that he
had, at the time, exhausted his peremptory challenges. He
was not required to object or to save exceptions to the denial
of his challenge in order to obtain appellate review. He was
only required to make the court aware of the action he
desired.

It is true that the question of a juror's qualification lies
within the sound judicial discretion of the trial judge and that
appellant had the burden of showing the prospective juror's
disqualification. See *Satterfield* v. *State*, 252 Ark. 747, 483 S.W.
2d 171; *Swindler* v. *State*, 264 Ark. 107, 569 S.W. 2d 120. This
case, however, is unlike *Gammel* v. *State*, 259 Ark. 96, 531 S.W.
2d 474, cited by the state. There the challenge was for actual
bias. Although Officer Bolton did not testify, the reliability of
the identification of appellant by the prosecuting attorney
and the propriety of the photographic lineup conducted by
Bolton and Officer Phililps were major issues in the case.
Phillips testified on cross-examination that, even though
there were hundreds of black males, "we" did not show any
of them, except for six, to the victim because "we had our
suspect." Bennie Beed testified that he really believed that
the whole matter was something like a police conspiracy to
get him tried for rape, robbery and kidnapping.

Although it was established by examination of Richard
Bolton that he would not be embarrassed by his brother's
connection with the case, the potential embarrassment of
other jurors in weighing the evidence seems to have never

been considered. If the statute on implied bias is read literally and technically, it was not Bolton's complaint that was the basis for the institution of the prosecution. But we have not construed this section of the statute in that way. We have construed it rather liberally toward insuring the constitutional right of a defendant to a trial by an impartial jury secured by Art. 2, § 10, Constitution of Arkansas. See *Swindler* v. *State*, supra; *Glover* v. *State*, 248 Ark. 1260, 455 S.W. 2d 670. In *Swindler*, we found abuse of the trial court's discretion in not sustaining a challenge for cause to a prospective juror who was an employee of the United States Marshall's office only because the victim of the crime was a city police officer. We also held that there was an abuse of discretion in not sustaining a challenge for cause to a member of the jury panel who had worked for the same company that employed the victim's father for 17 years and had expressed sympathy to the father.

Even in a civil case, we held that it was an abuse of discretion for the trial court to refuse to excuse the wife of a witness, for cause, in spite of the fact that she said she would not believe him above any other witness in the case. *Arkansas State Highway Comm'n.* v. *Young*, 241 Ark. 765, 410 S.W. 2d 120. There we recognized that the statute disqualifies jurors related to a party or his attorney, but made no reference to witnesses. We followed the polestar that "justice ought not only to be fair, but appear to be fair." There we stated the rule that where a close relative is a witness to a controverted issue in a case and the matter is brought to the attention of the trial court before the jury is sworn, it is an abuse of discretion for a trial court to refuse to strike a relative for cause. The polestar should be brighter and more clearly visible in a criminal case than in a civil one, rather than less so (see *Acklin* v. *State*, 270 Ark. 879, 606 S.W. 2d 584 (1980), particularly in view of our constitutional guarantee to an accused of trial by an impartial jury in Art. 2, § 10.

It is true that Officer Bolton did not testify; however, when we consider the role of this officer with reference to the initiation of the investigation, the search and the identification procedure, we cannot eliminate him as one on whose complaint the prosecution was instituted. Neither can we say

that Richard Bolton's answers on voir dire were sufficient to eliminate him as one who was prevented by a *relationship* or by *circumstances* from acting impartially, any more than we could do so in *Young*. In *Young*, we said:

> \*\*\* It does not stretch the imagination to say that the very presence of a witness' close relative on the jury would tend to inhibit the frank discussion necessary in a jury room for arriving at an impartial verdict—for what prudent banker or merchant on the jury, who was inclined to believe the witnesses for the Highway Commission, would care to criticize Mrs. Ragge's husband to her face?

How could a juror in this case freely criticize the identification procedures or even the search during jury deliberations?

Failure to sustain the challenge was prejudicial error. The juror was one whom appellant was not willing to accept after he had exhausted his peremptory challenges. When a defendant has used all his peremptory challenges, before a prospective juror is called, he may only challenge that juror for cause and not peremptorily, and it is reversible error to thereafter hold a biased juror competent. *Snyder* v. *State*, 151 Ark. 601, 237 S.W. 87.

Appellant attacked the legality of a search of the dwelling house in which Bennie Beed had been residing with his mother at the time the offenses were alleged to have occurred by a motion to suppress an emerald ring seized there as evidence. The ring was identified by the victim as hers. The burden was upon the state to justify the search. Where, as here, the search is pursuant to a warrant, the state must produce the warrant and show that it was issued in compliance with the law by producing the required written evidence relied upon by the magistrate as establishing probable cause for issuance of the warrant or by following proper procedures for establishing the contents of the warrant and its supporting evidence. *Schneider* v. *State*, 269 Ark. 245, 599 S.W. 2d 730 (1980). When this is done, the burden of showing the invalidity of the warrant and its supporting documents is upon the party moving to sup-

press evidence seized under authority of the warrant. *Schneider* v. *State*, supra.

Although there were two search warrants issued and two entries of the dwelling house, we will concern ourselves only with the second warrant and the search made in reliance on it because the ring was seized during that search. The search was made on April 27, 1979, the day the second warrant was issued by Municipal Judge Purifoy upon an affidavit by Chief Deputy Sheriff Don Branch of Miller County. Appellant alleges that the search was unlawful because it was based upon an unlawfully issued warrant. He asserts that the affidavit on which the warrant was issued failed to disclose how the unnamed informant was reliably informed that the things sought were in the place to be searched, along with other grounds not material here.

The affidavit was sufficient as to the reliability of the informant in that it contained a statement that he had previously provided information that led to the arrest and conviction of two individiuals for burglary and theft in the past. *State* v. *Lechner*, 262 Ark. 401, 557 S.W. 2d 195. The affidavit was not sufficient, however, in that it failed to disclose how the reliable informant knew that the ring and the other property described in the warrant were in the house to be searched. It was merely recited that the informant had said Bennie Beed had resided at the described premises during the time he was being sought by the officers for these crimes and that the property described was hidden in the house. The statement of this conclusion without any statement of underlying circumstances from which the informant arrived at it was insufficient to meet the test for showing probable cause for the search. *Lunsford* v. *State*, 262 Ark. 1, 552 S.W. 2d 646; *State* v. *Lechner*, supra. Denial of the motion to suppress the evidence was error.

Appellant complains that his counsel was denied the right of effective cross-examination and that the court commented on the evidence. Appellant contends that the trial judge prevented his attorney from stopping Phillips from giving hearsay testimony on cross-examination which the attorney contended was non-responsive to his question. We do

not agree that the answer was not responsive to the attorney's question: "Based on her description how did you conclude Mr. Beed to be a suspect in this case?" After the officer stated that the officers had, based on the description given them by the victim, talked to several people and received information through his investigation, appellant's attorney interrupted the answer which we take to have been responsive and, perhaps, even admissible as an explanation of the reason the officers did what they did. *Van Cleave* v. *State*, 268 Ark. 514, 598 S.W. 2d 65 (1980). A cross-examiner is not licensed to go on a fishing expedition without accepting the hazards of such a procedure which include answers which would not be admissible as direct testimony. *Arkansas State Highway Comm'n* v. *Russell*, 240 Ark. 21, 398 S.W. 2d 201; *Arkansas State Highway Comm'n.* v. *Fowler*, 240 Ark. 595, 401 S.W. 2d 1.

Another instance of the alleged improper restriction of cross-examination occurred during appellant's attorney's attempt to impeach the credibility of the identification of appellant by the alleged victim. The witness had, on cross-examination, admitted there was a possibility of mistake in identification of a total stranger viewed for only a short time, that appellant was the only black man in the court, and that she could have been mistaken as to the description of her assailant she had given the officers, but stated emphatically that she was positive that Beed was her assailant, even if there were testimony that Beed was elsewhere when she was assaulted. The only way that the attorney's next question could be interpreted as a question would have been from the inflection of his voice. The question the trial judge ruled argumentative and repetitive was: "As far as you are concerned. This man resembles your assailant close enough to be the right one?" We see no error. Ark. Stat. Ann. § 28-1001, Rule 611 (a) (Repl. 1979) gives the trial court reasonable control over the mode of interrogating witnesses so as to avoid needless consumption of time and to protect the witness from undue harassment. This does not really change the latitude of discretion heretofore vested in the trial judge in such matters.

Another instance is the attorney's cross-examination of the prosecuting witness about evidence of appellant's intent.

The question to which the state objected as speculative and which the court found improper was: "Do you have any reason to believe that your assailant had any intention to rape you when he forced you into the car at Skaggs?" The court limited the cross-examiner to asking what was said or done, leaving the determination of intent to the jury. Because of the testimony elicited by further examination, including a statement that the prosecutrix had not known if he (the assailant) was going to rape her, we find no reversible error in the limitation of cross-examination. Error may not be predicated upon a ruling excluding evidence unless a substantial right of a party is affected. Ark. Stat. Ann. § 28-1001, Rule 103 (a) (Repl. 1979).

Appellant states that his attorney had to forego cross-examination of Officer Phillips on rebuttal "as to the time of alibi" to preclude evidence of other unrelated cases from being heard by the jury. Phillips testified that when appellant Beed surrendered, Beed had asked the officer, "About this rape deal—when did it happen?" and said that he had been taken to his girl friend's house at about 7:30 that night by a fellow living near Mandeville and had remained there until 10:30 to 11:30. This was inconsistent with appellant's testimony and that of the witnesses who testified on behalf of appellant. Appellant's objection to the testimony was on the ground that the statement was not made in the presence of counsel. We do not understand how appellant's counsel was precluded from cross-examination, except by his own tactical decision.

Appellant contends that there were several instances where the trial judge commented on the evidence to appellant's prejudice. We do not see how the trial judge's remarks that the question by appellant's counsel as to the existence of any reason for her to believe that her assailant intended to rape her was speculative and that the question of intent was for determination by the jury, constituted a reprimand of counsel. The argument that permitting the prosecuting attorney to question a witness on voir dire in the presence of the jury about his presence in the courtroom after the witness had been sequestered, somehow amounted to a comment by the court indicative of a lack of

credibility is not persuasive. The witness denied having heard the testimony and was permitted to testify. We do not see how appellant was prejudiced by the court's questioning Williams about the kind of gambling he had been doing at the time about which he had testified, asking him if his statement that he and appellant had been shooting dice was made under oath and whether this had taken place in March, 1979. The witness had already testified that on Friday night, March 23, 1979, the date of the alleged commission of the crimes with which appellant had been charged, he had gone to Babe Martin's place to gamble and that he gambled continuously at a table from the time of his arrival there, somewhere between 10:00 and 11:30 p.m. and the time of his departure at 3:30 or 4:00 a.m. Williams had also said that he went there to gamble often. He said about 30 or 40 minutes after his arrival, Beed came there and stood at the table, along with 15 to 20 others, gambling until Williams left. The trial judge's inquiry pertained to the gambling at the place, not to Williams' testimony about Beed's presence. This line of inquiry should not be repeated on retrial.

There was neither an unwarranted limitation of cross-examination nor improper comment on the evidence when, after the prosecuting witness had testified on cross-examination that she and her husband, to whom she first reported the incident on which the charges were based, had separated before the alleged offense occurred and that a divorce suit was pending, the trial court sustained an objection by the state to that line of questioning and responded to a statement by appellant's attorney that he had a right to go into the character of the prosecuting witness by saying that the fact that the witness and her husband were separated did not necessarily go to her character. The trial court's remark simply stated the reason for sustaining the state's objection. Appellant did not attempt to indicate how the line of inquiry reflected upon the credibility of the witness. We do not find that the collective effect of the trial judge's remarks constituted an unmerited rebuke of appellant's attorney as appellant now contends. The only remark that might be so construed was the trial judge's statement permitting the objection of defense counsel to be "copiously noted of record." The descriptive adverb should not have been used, but we

take the statement to have been an expression of the trial judge's irritation by defense counsel's tactics rather than a reprimand and not reversible error. See *Rogers* v. *State*, 257 Ark. 144, 515 S.W. 2d 79.

Appellant advances several arguments about the admission of evidence, which we will now consider, insofar as they may affect a new trial.

During a pretrial hearing, appellant objected to admission of the photographic lineup folder which had been presented to the prosecuting witness for identification purposes. The trial judge reserved a ruling at that time but permitted introduction of the folder during the trial. Appellant's objections here are multiple. He contends that the identification was unfairly influenced because: (1) testimony as to the date it was conducted is "self-contradicting;" (2) the photographs all showed only head and shoulders, so they could not have been selected from the hundreds in police files from the description given by the prosecuting witness and the only characteristic of the person portrayed that fit the description given was that all of those pictured were relatively young black males; and (3) the state deliberately limited the number of photographs to be viewed to six, rather than permit the prosecuting witness to view the numerous pictures of young black males contained in the sheriff's files.

Although the reliability of eyewitness identification is normally a question for the jury, the fundamental fairness of identification procedures addresses itself to the trial court. See *Synoground* v. *State*, 260 Ark. 756, 543 S.W. 2d 935; *Hulsey* v. *State*, 261 Ark. 449, 549 S.W. 2d 73, cert. den. 439 U.S. 882, 99 S. Ct. 220, 58 L. Ed. 2d 194. Although the question whether a pretrial photograph identification procedure is unduly prejudicial may be a mixed question of law and fact, (*McClain* v. *State*, 247 Ark. 33, 444 S.W. 2d 99, *Synoground* v. *State*, supra) we should not reverse the trial judge's decision unless, viewing the totality of the circumstances, it is clearly erroneous. See *Hinton* v. *State*, 260 Ark. 42, 537 S.W. 2d 800; *Mayes* v. *State*, 264 Ark. 283, 571 S.W. 2d 420. Identification testimony is properly admissible, if from the totality of the circumstances the confrontation did not give rise to a very

substantial likelihood of irreparable misidentification. *Lindsey v. State*, 264 Ark. 430, 572 S.W. 2d 145. We cannot say that the trial court erred in admitting the evidence concerning the photograph identification.

The discrepancy in dates is based upon the testimony of Officer Phillips at the pretrial hearing that the lineup was conducted on March 23, 1979, and that the prosecuting witness only viewed the photographs on one occasion. He said that none of those shown in the photographs were in custody at that time. The prosecuting witness testified at the pretrial hearing that she saw them on a later date, after she had given a statement about the alleged offense. Phillips testified at the trial that the prosecuting witness had viewed the photographs on March 27. The witness also testified during the trial that she had viewed the photographs on March 27. The discrepancy in dates was inconsequential and not indicative of unfair influence.

Phillips testified that, in selecting the photographs, the officers attempted to choose those of persons of the same height and age and complexion that would match the suspect. He said that the photographs, although showing only the heads and shoulders of the persons pictured, were of persons of the same build, complexion and age. The prosecuting witness said that she had described her assailant as a black male, between 5′5″ or 5′6″ tall, slender, weighing about 145 pounds, well dressed, wearing a three-piece suit and snap-brim hat, in his early twenties, with smooth complexion and no facial hair, light skinned, soft spoken, not having an ordinary black accent and not using slang. She said that the only similarities in the photographs and her description were that the subjects were all black and all relatively young. Keeping in mind the fact that appellant was not then in custody, it is hardly likely that the photographs would show similar wearing apparel. If the photograph of appellant in possession of the police (it was obtained from the Arkansas City Police Department), showed only head and shoulders, it was logical that all others be of the same type. This fact, standing alone, was not evidence of unfair police influence.

The limitation to six photographs is a matter that gives

us more concern when considered along with appellant's other objections. As we read Officer Phillips' testimony at the pretrial hearing, however, it discloses that he and Officer Bolton went through the files of photographs available until they had found five of approximately the same age as their suspect, Beed, with similar haircuts, features and builds; they did not consider it necessary to have the prosecuting witness go through numerous other photographs nor did they believe this limitation might unduly influence her in her identification.

The test we apply in such identifications is based on factors stated in *Manson* v. *Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). *McCraw* v. *State*, 262 Ark. 707, 561 S.W. 2d 71. They are: the opportunity of the witness to view the criminal at the time of the crime, the degree of attention of the witness, the accuracy of the prior description of the criminal, the level of certainty demonstrated at the confrontation and the time between the crime and the confrontation. There may have been some discrepancies in the description given as to height and weight, and the matter of facial hair was subject to some dispute; however, the prosecuting witness was always positive and unwavering. We cannot say that the collective effect of those matters appellant takes to be suggestive is not outweighed by the pertinent factors to be considered in determining reliability of identification for admission of the evidence.

Appellant next contends that, since the folder of photographs was introduced through Officer Phillips rather than through the prosecuting witness, it was hearsay, because the witness testified that she identified appellant's photograph. Any error in this respect was cured when the prosecuting witness testified and was cross-examined extensively about her identification of appellant and the description she had given the police. *White* v. *State*, 270 Ark. 482, 605 S.W. 2d 11 (1980). See also, *French* v. *State*, 231 Ark. 677, 331 S.W. 2d 863; *Bishop* v. *State*, 236 Ark. 12, 364 S.W. 2d 676.

Appellant next makes a two-pronged attack upon the admission of evidence of the photographic lineup, i.e., one,

the state's exhibits two and three were unnecessary because they were cumulative and two, their probative value was substantially outweighed by unfair prejudice. The mere fact that evidence is cumulative may be a ground for its exclusion, in the sound discretion of the trial judge, but it is hardly a basis for holding that its admission, otherwise proper, constitutes an abuse of discretion. *McMillan* v. *State*, 229 Ark. 249, 314 S.W. 2d 483; *Sheppard* v. *State*, 120 Ark. 160, 179 S.W. 168; 23 CJS 1175, Criminal Law, § 1041. See also, *Hall* v. *State*, 64 Ark. 121, 40 S.W. 578; *Kindrix* v. *State*, 138 Ark. 594, 212 S.W. 84. Ark. Stat. Ann. § 28-1001, Rule 403 (Repl. 1979) does not require a different approach, in either the trial or the appellate court, for it merely *permits* the exclusion of evidence as cumulative. The question of weighing the prejudicial effect of cumulative evidence against its probative value is a matter of balancing which is primarily the function of the trial judge in the exercise of his discretion. The exercise of discretion by the trial court in such a matter should not be interfered with on appeal in the absence of manifest abuse. *McMillan* v. *State*, supra; *Sheppard* v. *State*, supra. See also, Tompkins, The Trial Evidence Handbook 3, § 8 (2d. Ed. 1936). It should be noted that under Ark. Stat. Ann. § 28-1001, Rule 403 (Repl. 1979), relevant evidence should not be excluded unless its probative value is *substantially* outweighed by *unfair* prejudice. Of course, it is likely that evidence offered by the state will be prejudicial to an accused, or it probably would not be offered. The first consideration for a trial judge is whether evidence which makes the existence of a fact more probable creates a danger of unfair prejudice. The secondary consideration is whether the danger of the unfair prejudice substantially outweighs the probative value of the evidence. There was no abuse of discretion in the admission of this evidence, particularly in view of the alibi defense and the necessarily persistent attack on the identification of appellant by the prosecuting witness.

After appellant and his witnesses had testified in an effort to establish an alibi, the state called Ed Kreiger as a witness in rebuttal. Kreiger was a jailer employed by the Miller County Sheriff's office. He testified that on April 6, 1979, he had overheard Beed say to someone in a telephone conversation, "Get the gun. It's either in the suitcase or by the dryer." The abstract of the record merely discloses that

appellant's attorney made a general objection and any specific ground was stated in an off-the-record discussion at the bench. A general objection cannot be the basis for reversible error. Ark. Stat. Ann. § 28-1001, Rule 103 (a) (Repl. 1979). Appellant now says that, in order to avoid disclosing that the conversation related to another offense with which appellant was charged, his attorney objected on the ground that, when the statement was made, appellant had not waived the right to counsel. The statement was not the result of any interrogation whatever. The mere fact that appellant was in custody when it was made did not make it inadmissible without a showing that appellant had waived his right to counsel, where there was no interrogation.

It was police misconduct that was intended to be inhibited by *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed. 2d 694 (1970) and its progeny and not the making of incriminating statements. Statements which do not result from in-custody interrogation are not barred. *Johnson* v. *State*, 252 Ark. 1113, 482 S.W. 2d 600. Spontaneous, voluntary and unsolicited statements made when an accused, although in custody, is not being interrogated are admissible. *Steel* v. *State*, 246 Ark. 75, 436 S.W. 2d 800; *Crawford* v. *State*, 254 Ark. 253, 492 S.W. 2d 900; *Reynolds* v. *State*, 254 Ark. 1007, 497 S.W. 2d 275; *Upton* v. *State*, 257 Ark. 424, 516 S.W. 2d 904; *Sanders* v. *State*, 259 Ark. 329, 532 S.W. 2d 752; *Little* v. *State*, 261 Ark. 859, 554 S.W. 2d 312. It might be advisable for the court on retrial to conduct a hearing in camera to determine whether the statement was voluntary.

The decision of appellant's attorney not to base an objection on the relationship of the statement to another crime was clearly a tactical one, but the testimony would not have been rendered inadmissible had the attorney chosen a different tactical course.

Appellant moved the court to require the state to elect whether it intended to prosecute him for kidnapping or for rape. The basis of the motion was the contention that the same acts of force formed the basis for both the forcible compulsion which was an element of the charge of rape and the charge of kidnapping with the purpose of engaging in sexual

intercourse. Appellant argues that the same restraint was used to prove both rape and kidnapping and this resulted in putting him in double jeopardy. He does not contend that the same acts cannot be used as proof of two separate and distinct felonies. He relies upon the definition of the two crimes and the commentary to the section of the statute in the Arkansas Criminal Code defining kidnapping and rape. He points out that kidnapping is a continuous offense requiring proof that the accused restrained another person, without that person's consent, so as to interfere with the other person's liberty with the purpose of engaging in certain acts, one of which is engaging in sexual intercourse, while rape is the act of engaging in sexual intercourse with another person by forcible compulsion, which is either physical force, or a threat, express or implied, of death or physical injury to or kidnapping of another person. See Ark. Stat. Ann. §§ 41-1702, -1803 and -1801 (2) (Repl. 1977). The commentary on which appellant places greatest reliance follows Ark. Stat. Ann. § 41-1702. That commentary, however, is a clear recognition that when, as here, the restraint exceeds that normally incident to the crime of rape or robbery, the robber should also be subject to prosecution for kidnapping.

The evidence here clearly forms the basis for the two separate crimes of kidnapping and rape. The prosecutrix testified that she was accosted by her assailant when, at about 10:00 p.m. on March 23, 1979, she returned to her automobile, which was in the parking lot at the Skaggs-Albertson grocery store in Texarkana, and that the assailant jerked the car door back, shoved a silver derringer in her face, said, "Move over or I'll kill you," got in the car, started it up and drove out Highway 67 to Mandeville, where he turned the car into a field, told her to get out of the car or he would shoot her head off, ordered her into the back seat of the car and to take her clothes off, and then raped her. She said that the accused first indicated his intention to have sexual intercourse with her while they were driving down Highway 67. She said that she had first resisted the act of sexual intercourse by fighting her assailant, but that he said that if she fought him, he would kill her. She testified that he held the gun in his hand throughout the act of intercourse. She said that she would not have submitted to the rape or given the

man her rings had he not had a weapon, that he threatened her on several occasions and that she believed he would kill her. Clearly there was evidence of more than the minimal restraint which necessarily accompanies the crime of rape. We have recently rejected an argument similar to that of appellant in *Conley* v. *State*, 270 Ark. 886, 607 S.W. 2d 328 (1980). For this reason we find cases from other jurisdictions, upon which appellant relies, unpersuasive. We find no merit in appellant's argument on this point.

Appellant contends that the trial court erred in denying his motion for dismissal of the charge of aggravated robbery at the close of the state's case-in-chief and that there was insufficient evidence to support his conviction of that crime. Appellant contends that the evidence did not show either robbery or aggravated robbery, but would have supported, at best, theft of property by threat. It is appellant's contention that there could be no aggravated robbery because there was no robbery and there was no evidence of a threat to immediately employ physical force at the time the prosecuting witness gave her rings to her assailant. He says that the prosecuting witness admitted that the theft of her property was not committed while her assailant employed or threatened to employ physical force upon her.

Appellant points out that the immediacy of the threatened physical force distinguishes robbery from theft by threat. See Ark. Stat. Ann. §§ 41-2102 (Supp. 1979), -2103 (Repl. 1977), -41 -2203 (Supp. 1979) and Commentary, §§ 41-2103, -2201 (Repl. 1977). Appellant relies to some extent upon apparent inconsistencies in the testimony of the prosecuting witness, and between her testimony and prior statements to police officers. These are of no consequence in our consideration of this piont. At most, they went to the credibility of the witness. *Kitchen* v. *State*, 271 Ark. 1, 607 S.W. 2d 345 (1980). Resolution of the conflicts and the question of credibility were for the jury. *Riddick* v. *State*, 271 Ark. 818, 607 S.W. 2d 671 (1980). In determining the sufficiency of the evidence to show aggravated robbery, we only look to see if, viewed in the light most favorable to the state, there was substantial evidence to support the charge. *Ply* v. *State*, 270 Ark. 554, 606 S.W. 2d 556 (1980).

The gist of appellant's argument is that there must have been some active, actual threat at the time the rings were taken to constitute robbery, or that, if there was an implied threat, it no longer existed. We do not agree when we view the evidence as we must.

The victim testified:

When she was accosted in the parking lot, Beed shoved a gun in her face and said: "Move over or I'll kill you." During the time they were in the car, he had the gun, a silver derringer, at all times, and even held it in his hand while he was raping her. When she was having difficulty in keeping from crying, Beed told her that he had said he would let her go, but if she kept on crying he would have to kill her. When he ordered her out of the car in a grassy field near Mandeville, the alternative offered was having her head shot off. When she was reluctant to take her clothes off when Beed ordered her to do so, he again threatened to kill her. When she resisted sexual intercourse by fighting Beed, he said if she fought, he would kill her. He seemed to be trying to agitate her, so she would fight. When Beed decided to terminate the sexual act, he told her he had decided not to kill her because she had children and he would let her go if she would not tell anyone about what had happened. He noticed her rings as she was getting dressed, asked if they were valuable and told her to give them to him along with all the money she had. He still had the gun in his hand. He told her then that he did not intend to hurt her, but she did not believe him. When Beed first got into the car at the parking lot, he had told her that he was going to kill her and wanted her money. She had no doubt in her mind about Beed's intention to kill her. She would not have given Beed the rings if he had not had a weapon. He had threatened her several times and she believed he would kill her.

This testimony constituted very substantial evidence that there was an immediate threat of death or serious physical injury to the prosecuting witness, at least until she had surrendered her rings and her money.

Appellant contends that the court erred by not instructing the jury on the lesser included offense of sexual abuse in the first degree. The prosecuting witness testified that Beed had sexual intercourse with her, that the sexual act lasted 5 to 15 minutes and that she did not believe that Beed reached a sexual climax before he got up, told her that he had decided not to do this, but that she was positive there had been penetration. We do not agree with appellant's statement that the witness was confused as to whether Beed decided to discontinue the sexual act before or during the alleged act. The fact that the doctor who examined her four or five hours after the incident was unable to determine when she had last had sexual intercourse and the semen he found in a pelvic examination contained non-motile sperm was immaterial. It is true that the physician said that sperm normally had a life expectancy of two or three days, but he also said that his findings were consistent with recent sexual intercourse and mentioned a minimal degree of swelling around the labia. He said that a number of things can cause non-motility of sperm. Among them was the production (by some females) of antibodies which rapidly kill sperm.

It is not error to refuse to instruct the jury on a lesser included offense where the evidence, as here, clearly shows that the defendant is either guilty of the greater offense or innocent. *Caton v. State*, 252 Ark. 420, 479 S.W. 2d 537. Under the present law, a court is not obligated to instruct a jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the lesser degree. Ark. Stat. Ann. § 41-105 (3) (Repl. 1977). We find no rational basis for acquitting Beed of rape and finding him guilty of sexual abuse in the first degree.

Appellant complains of the court's instruction on theft of property because of omissions he considers material and because the court did not submit the lesser included offense of theft as a class C felony and theft as a misdemeanor. We should first say that appellant is in error as to the minimum property value required for a class B felony by Act 360 of 1977. Ark. Stat. Ann. § 41-2203 (Repl. 1977). That amount

was reduced from $10,000 to $2,500. The maximum value which could be found from the evidence here was $1,510.

The jury could find appellant guilty of theft as a class B felony if it found that the property was obtained by the threat of serious physical injury to the victim, regardless of the value of the property. It does appear that the lesser included offense of theft, class C felony, should be given.

Finally, appellant contends that the trial court erred in sentencing him without advising him of his right to appeal, the period of time prescribed for appeal, fixing bond for appeal or stating his right to bond, and without the benefit of any presentence investigation or report to determine any mitigating circumstances. We agree with appellant that it was error for the court to sentence him before according him the right of allocution. He has shown no prejudice because of the court's failure to advise him of his rights with regard to appeal or to fix bond pending appeal. The resort to presentence investigation is discretionary with the trial court. Since the court made a life sentence, a 50 year sentence and a 10 year sentence run consecutively, it might have been the better practice to first have a presentence investigation, but we find no abuse of the trial court's discretion in this case.

The judgment is reversed and the cause remanded for a new trial.

STROUD, J., concurs.

JOHN F. STROUD, J., concurs.

JOHN F. STROUD, Justice, concurring. I am compelled to concur in the reversal of the conviction in this case because the affidavit in support of the search warrant was defective. This court has held many times that an affidavit of a police officer setting forth information gained from a confidential informant must not only show the information was obtained from a reliable source, but must also set forth some of the facts or circumstances upon which the informant's information was based. *State* v. *Lechner*, 262 Ark. 401, 557 S.W. 2d 195 (1977); *Lunsford* v. *State*, 262 Ark. 1, 552, S.W. 2d 646 (1977). Here the affidavit contained sufficient facts to show the reliability of the confidential informant, but was completely

devoid of any underlying circumstances or facts supporting the informant's conclusion that the stolen items were hidden in the residence of appellant's mother.

I favor a more lenient requirement for the issuance of a search warrant to permit the search of a residence for specific stolen property after the accused has been charged and arrested for burglary or robbery, because a person's residence is the usual and normal place where such booty is hidden. To require that a confidential informant see the stolen goods there, be told by the accused that they are there, or otherwise have facts indicating that they are secreted in the residence is in most cases a denial of the right to search. I concur only because my view is inundated by the prior decisions of this court and the United States Supreme Court. *Aguilar* v. *Texas*, 378 U.S. 108 (1965).

However, I disagree with the majority opinion in also basing their reversal on the failure of the trial court to dismiss juror Richard Bolton for cause. Although I agree that it would have been expedient for the trial judge to have dismissed juror Bolton for cause, and I would urge all circuit judges to do so in similar circumstances, I do not think the failure to do so constituted reversible error. The majority acknowledge that a literal reading of Ark. Stat. Ann. § 43-1920 (Repl. 1977) does not require a dismissal of juror Bolton for cause, but they nevertheless apply the statute here on the premise of liberal construction. The portion of the statute relied on provides that a challenge for implied bias *may* be taken where the juror is related by consanguinity to the person on whose complaint the prosecution was instituted. There is no question about the relationship here, but the only possible person upon whose complaint the prosecution could have been instituted was the victim. I do not think that language can be expanded so liberally as to include a police officer who participated in the investigation, nor do I think the legislature could possibly have intended that meaning. It was, therefore, not error to refuse to excuse juror Bolton for implied bias under § 43-1920.

The majority opinion also indicated that the juror should have been excused for actual bias when it said,

"Neither can we say that Richard Bolton's answers on *voir dire* were sufficient to eliminate him as one who was prevented by a *relationship* or by *circumstances* from acting impartially . . ." Although a lengthy *voir dire* of the entire panel was conducted by the trial judge, the questioning of Mr. Bolton by the defense attorney after he had been called as a juror continued as follows:

Q. Mr. Bolton, should it develop from the evidence in this case, that your brother, who I believe is currently employed himself in law-enforcement work, should be a witness in this case or should have worked in connection with the investigation of this case, would that cause you to lean more heavily in favor of the State than toward the defendant?

A. No, sir.

Q. You heard, of course, the question to Mr. Walker about knowing a witness in the case. If you feel that you are chosen on this jury, and in your deliberations arriving at a verdict of not guilty, that it would be embarrassing to you to discuss this case with your friends being on the Sheriff's Department and Police Department?

A. No, sir.

Q. You don't think it would bother you at all?

A. No, sir.

Q. You wouldn't let that relationship influence your judgment of the evidence in this case?

A. No, sir.

Q. You wouldn't try to persuade any of the other jurors that those things should be considered against their judgment?

A. No, sir.

Following the questioning by counsel, the trial court received an affirmative response from Bolton to an additional question, "Do you feel that you can, without any embarrassment, serve and let the verdict speak the truth?" It obviously would have been impossible for Mr. Bolton to have given more perfect responses reflecting a total lack of actual bias. The judge had the right to accept Mr. Bolton's responses as being truthful. The determination of actual bias is a matter lying within the sound judicial discretion of the trial judge. *Gammel* v. *State*, 259 Ark. 96, 531 S.W. 2d 474 (1976).

The majority rely on *Arkansas State Highway Comm'n* v. *Young*, 241 Ark. 765, 410 S.W. 2d 120 (1967), to support their decision that it was reversible error not to excuse juror Bolton for cause due to his brother's participation as a police officer in the investigation of the case. That case did find it was error not to excuse the wife of a witness for cause, but in this case Officer Bolton was not a witness. In *Jones* v. *State*, 230 Ark. 18, 320 S.W. 2d 645 (1959), where a juror was the sister of a police officer who testified in the case, this court held, "The relationship of a juror to a witness in the trial does not *per se* disqualify the juror." The majority opinion in this case is tantamount to a holding that Mr. Bolton is disqualified as a juror *per se* even though his brother was not a witness in the case. The appellant is entitled to a fair trial, but neither he nor any other accused is entitled to a perfect trial.